Ralph DOUGLAS, doing business as Douglas Electric Company, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS UNION, Local No. 498 of A. F. of L.; Lotus Lewis, Business Agent of Local 498; John, Gilbert, Assistant Business Agent of Local 498; Gerrit Kliffman, Steward of Local 498; Robert Sweet and Dunbar (whose first name is unknown to plaintiff), Defendants.

Civ. A. No. 2782.

United States District Court
W. D. Michigan, S. D.

Sept. 19, 1955.

the circuit court of Wexford county, Michigan, on August 29, 1955, and the plaintiff's motion to remand the case to the circuit court of Wexford county.

On August 29th of this year the plaintiff Ralph Douglas, doing business as Douglas Electric Company, who owns and operates a relatively small electrical contracting business in Cadillac, Michigan, filed complaint in the circuit court of Wexford county, alleging in substance that he was engaged as an independent contractor to do certain electrical work at the plant or factory of the Kysor Heater Company in Cadillac. He alleged that he and his employees, few in number, did not belong to any union and did not wish to join any union. He further alleged that in the construction work at the Kysor Heater Company factory the general contractor employed, for the most part, union members; that among the union members employed by the general contractor were members of the defendant union, and that carpenters, masons, common laborers, and others employed on the construction work were union members. The plaintiff alleges that it is his belief that individual defendants Lewis, Gilbert, Kliffman, Sweet, and Dunbar were all members of the defendant union.

The plaintiff further alleges in his complaint that the members of the defendant union and the individual defendants had quit work at the Kysor plant and had established and were maintaining picket lines at the Kysor factory; that such picket lines were maintained in furtherance of an unlawful labor objective and that the picketing constituted a secondary boycott against the Kysor Company. The plaintiff alleges that the picketing by the defendant union and its members was for the purpose of coercing and compelling the plaintiff and his employees to become members of the defendant union, and to coerce and force the Kysor Company to compel the plaintiff and his employees to become members of the union. He further alleges that the conduct of the defendants and their ob-

Schmidt, Smith & Howlett and Robert G. Howlett, Grand Rapids, Mich., Richard W. Crandell, Cadillac, Mich., for plaintiff.

Morse & Kleiner and A. Robert Kleiner, Grand Rapids, Mich., for defendant.

STARR, Chief Judge.

The matters before the court requiring determination today are the defendants' motion to vacate and set aside the temporary restraining order entered by

jectives were unlawful and in violation of the laws of the State of Michigan, particularly §§ 16 and 17 of Act No. 176 of the Public Acts of 1939 (being Comp. Laws Mich. 1948, §§ 423.16 and 423.17). The plaintiff further alleges that the defendants have entered into an arrangement or conspiracy to violate § 2 of Act No. 329 of the Michigan Public Acts of 1905 (being Comp.Laws Mich. 1948, § 445.762) by organizing all electrical contractors in the Cadillac area for the purpose of establishing and maintaining a monopoly in the electrical contracting trade in that area.

The plaintiff asks for a temporary injunction enjoining the defendants from picketing the Kysor Heater Company factory and from picketing the plaintiff's principal place of business and from inducing or encouraging the employees of any employer to engage in a concerted refusal in the course of their employment to deliver, furnish, transport or otherwise handle any supplies, goods, articles or commodities to or from the Kysor plant or any place where the plaintiff was employed, and from threatening or ordering the boycott of any persons supplying goods, articles, commodities, and supplies to the plaintiff or the Kysor Company. The plaintiff asks that the restraining order or temporary injunction be made permanent. He further asks: "That the court assess plaintiff's damages brought about by the unlawful conduct of defendants and that defendants be decreed to pay the same."

When the plaintiff's complaint was filed on August 29th, the circuit court issued a temporary restraining order enjoining the defendants from picketing the Kysor factory and from picketing the plaintiff's principal place of business and any place where he and his employees were employed; also enjoining the defendants from inducing or encouraging other employers and the employees of any employer from engaging in a concerted refusal in the course of their employment to furnish and deliver supplies, goods, articles or commodities to the Kysor Company or to the plaintiff, or to cause said employees not to deliver supplies, goods, articles or commodities from the Kysor plant; and also enjoining the defendants from threatening or ordering boycotts against any person supplying goods, articles, commodities, and supplies to the plaintiff or the Kysor Company.

In pursuance of 28 U.S.C.A. § 1441 et seq., the defendants removed this case from the circuit court of Wexford county to this Federal district court on September 8th, and on that date the defendants filed a motion or petition to vacate the temporary restraining order entered in the Wexford county circuit court on August 29th. In pursuance of the defendants' petition to vacate the temporary restraining order, this court on September 8th entered an order directing the plaintiff to appear in this court today, September 19th, and show cause why the temporary restraining order entered in the circuit court of Wexford county on August 29th should not be vacated and set aside.

On September 14th the plaintiff filed a motion to remand this case to the circuit court of Wexford county on the grounds that this court is without jurisdiction to hear and determine the matters in issue and is without jurisdiction of the parties or subject matter of the suit for the following reasons: (1) That there is no diversity of citizenship between the parties and that the action involves only questions arising under the laws and statutes of the State of Michigan; (2) that this action does not involve violation by the defendants of any Federal statutes, and in particular does not involve any violation of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 141 et seq.; (3) that the matter in controversy as between the plaintiff and defendants does not exceed the sum of $3,000; (4) that the action is not a civil action of which the district courts of the United States would have original jurisdiction, 28 U.S.C.A. § 1441(a); and (5) that the action is not founded upon a claim

of right arising under the Constitution, treaties or laws of the United States, and that the action was not removable under 28 U.S.C.A. § 1441.

In considering the questions presented by plaintiff's motion to remand and the defendants' motion to vacate the temporary restraining order, relative to the jurisdiction of this Federal court, it must be kept in mind that the plaintiff makes no claim or charge of violence or fraud by the defendant union or its members. It must also be kept in mind that in his complaint the plaintiff claims damages resulting from the alleged unlawful conduct of the defendants and asks that the defendants be decreed to pay such damages. The plaintiff does not specify in his complaint the definite amount of damage he claims; however, he has filed an affidavit in this case in which he states that he claims damages in an amount "substantially less than $3,000."

Title 28 U.S.C.A. § 1331 provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

Title 28 U.S.C.A. § 1332(a) provides:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between:

"(1) Citizens of different States".

From the allegations of the complaint and other pleadings in this case it is clear that there is no diversity of citizenship between the parties in this action, and from the plaintiff's complaint and affidavit it appears that the matter in controversy does not involve the requisite jurisdictional amount. However, 28 U.S.C.A. § 1337 provides:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

In considering the plaintiff's motion to remand in this case the court must first determine whether the labor controversy involved in this action affects commerce, in that it burdens or obstructs commerce or the free flow of commerce. The complaint alleges facts which, if established, would constitute an unfair labor practice under § 303(a) of the Labor Management Relations Act of 1947 (being 29 U.S.C.A. § 187[a] ), which provides:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—

"(1) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person".

The question is, does this alleged unfair labor practice affect commerce, in that it burdens or obstructs commerce or the free flow of commerce? If commerce is thus affected, then under 28 U.S.C.A. § 1337 this court would have had original jurisdiction of this action.

It appears that the plaintiff owns and conducts a relatively small electrical contracting business in the city of Cadillac. However, it has today been stipulated on

the record that the Kysor Heater Company, for whom the plaintiff and his employees were doing electrical work in the construction of a factory building, is engaged in the industrial activity of manufacturing and selling heaters, principally for commercial trucks and buses; also that the Kysor Company in the period of one year shipped goods and merchandise to customers outside of the State of Michigan or performed services outside that State in the amount of $1,900,995.

Therefore, from facts shown by the pleadings and facts stipulated on the record today it is clear that the Kysor Company, in whose plant or factory the plaintiff was doing electrical work, is engaged in interstate commerce.

It is alleged in plaintiff's complaint that the union members employed by the general contractor have picketed the plant of the Kysor Heater Company for the purpose of compelling the plaintiff and his employees to join the defendant union, and that union truck drivers have refused to cross the picket line to deliver goods and merchandise to the Kysor plant and to pick up and transport merchandise and supplies from the plant. It is also alleged that union members employed by the general contractor have quit work and have refused to cross the picket line, and it appears that there has been a stoppage or delay in the construction work at the Kysor plant. This stoppage or delay in the construction of the Kysor Company building will quite obviously affect the interstate business activities of that company.

As stated before, the question is—does the defendants' alleged unfair labor practice, which in effect would undoubtedly constitute a secondary boycott of the Kysor plant, affect commerce?

In considering an appeal from a district court injunction restraining certain alleged unfair labor practices in the building industry, in the case of Shore, for and on Behalf of N. L. R. B. v. Building & Construction Trades Council of Pittsburgh, Pa., 3 Cir., 173 F.2d 678, at pages 680, 681, 8 A.L.R.2d 731, the court said:

"On behalf of the National Labor Relations Board it is pointed out that in this Act, as in the Wagner Act, 29 U.S.C.A. § 151 et seq., Congress has endeavored to exercise the commerce power given to it under the Constitution, art. 1, § 8, cl. 3, so far as that power will reach. Not only are labor practices which occur during the actual conduct of interstate commerce regulated, but regulation is likewise extended to certain acts which may 'affect' interstate commerce. In the past decade the Supreme Court has told us in a series of decisions applicable to various aspects of federal legislation, how wide the power under the commerce clause is. Artificial divisions previously established between such things as production, manufacturing and transportation have been swept away. And, as Mr. Justice Frankfurter pointed out in the Polish National Alliance case [322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509], what affects interstate commerce is a matter of practical judgment.

" * * * It was likewise pointed out that in 1946 the total value of new construction in the United States was over $10,000,000,000.

"All of this argument adds up to the conclusion that what affects the building industry in a given community affects interstate commerce and that the total effect of a $10,-000,000,000 industry on interstate commerce is obviously very appreciable. One small stoppage may not have an immediately perceptible effect upon the flow of the whole stream. But many small stoppages will have such effect. And like the small amount of grain in Wickard v. Filburn [317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122], the power to regulate is not lost because of the small size of any individual contri-

bution. We reach the conclusion that it cannot be denied that Congress may, through its power to regulate what affects interstate commerce, regulate labor practices in industries which are themselves dependent on interstate commerce. That Congress has done so in the Act regulating labor relations is established. There is no escape, therefore, from the answer that the power is there and Congress has chosen to exercise it."

The Shore Case, from which I have just quoted, and other authorities seem clearly to hold that what affects the building industry in any community really affects interstate commerce, even though an unfair labor practice and a stoppage of work in a particular instance may not have an immediately perceptible effect upon the flow of the whole stream of commerce. As the court said in the Shore Case, "Many small stoppages will have such effect."

█ Applying the court's test in the Shore Case, from which I have quoted, to the alleged facts in the present case, it can reasonably be said that the defendants' alleged unfair labor practices affect commerce. See also the following authorities relative to industries or activities affecting commerce: National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Local 74, United Brotherhood of Carpenters & Joiners of America v. National Labor Relations Board, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Relations Board v. Dixie Terminal Co., 6 Cir., 210 F.2d 538, 43 A.L.R.2d 902; National Labor Relations Board v. Reed, 9 Cir., 206 F.2d 184; Joliet Contractors Ass'n v. National Labor Relations Board, 7 Cir., 193 F.2d 833.

█ Having concluded in the present case that commerce is affected, the court must next determine whether the case is properly removable from the State court to this Federal court. From the allegations and prayer of the plaintiff's complaint and his affidavit it seems clear that he is claiming damages in some amount less than $3,000. It is difficult, if not impossible, to determine from the pleadings and the facts now before the court whether the plaintiff is claiming damages under § 303 of the Labor Management Relations Act, or whether he is asserting a claim for damages in a common-law action. However, under the established law the plaintiff could have begun his action for damages in a Federal district court or he could have begun it in a State court. Under § 303 of the Labor Management Relations Act the Federal court and the State court would have concurrent jurisdiction of the action. In United Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, at pages 665, 666, 74 S.Ct. 833, at page 838, 98 L.Ed. 1025, the court said:

"One instance in which the Act prescribes judicial procedure for the recovery of damages caused by unfair labor practices is that with reference to the jurisdiction of federal and other courts to adjudicate claims for damages resulting from secondary boycotts. In that instance the Act expressly authorizes a recovery of damages in any Federal District Court and 'in any other court having jurisdiction of the parties'. By this provision, the Act assures uniformity, otherwise lacking, in rights of recovery in the state courts and grants jurisdiction to the federal courts without respect to the amount in controversy. To recover damages under that section is consistent with the existence of jurisdiction in state courts to enforce criminal penalties and common-law liabilities generally. On the other hand, it is not consistent to say that Congress, in that section, authorizes court action for the recovery of damages caused by tortious conduct related to secon-

dary boycotts and yet without express mention of it, Congress abolishes all common-law rights to recover damages caused more directly and flagrantly through such conduct as is before us."

■ Having held that commerce is affected by the defendants' alleged unfair labor practices in the present case, it is clear that if his action is for damages under § 303 of the Labor Management Relations Act, then this court would have orginal jurisdiction, and the case would be properly removable under 28 U.S.C.A. § 1441. On the other hand, if the plaintiff is seeking damages in a common-law action, the court would have had original jurisdiction of that action, and it would also be removable to this court under 28 U.S.C.A. § 1441, which provides in part:

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

■ The fact that § 303 of the Labor Management Relations Act provides for an action for damages in a Federal district court or other court having jurisdiction of the parties does not limit or amend the above-quoted removal statute, 28 U.S.C.A. § 1441, or prevent removal of the plaintiff's action from a State court to this Federal district court. See Algonquin Gas Transmission Co. v. Gregory, D.C., 105 F.Supp. 64; Ricciardi v. Lazzara Baking Corporation, D.C., 32 F.Supp. 956; Young & Jones v. Hiawatha Gin & Mfg. Co., D.C., 17 F.2d 193.

■ Neither § 303 of the Labor Management Relations Act nor the Commerce Act, 28 U.S.C.A. § 1337, requires diversity of citizenship or the allegation of a jurisdictional amount to give a Federal district court jurisdiction. See United Brick & Clay Workers of America v. Deena Artware, Inc., 6 Cir., 198 F.2d 637; Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441; S. E. Overton Co. v. International Brotherhood of Teamsters, D.C., 115 F.Supp. 764; Pocahontas Terminal Corporation v. Portland Building & Construction Trade Council, D.C., 93 F.Supp. 217.

■ The court expressly wishes to point out that if the plaintiff in the present action were seeking only injunctive relief in the State court action, then under the holding in the Direct Transit Lines case, Direct Transit Lines v. Starr, 6 Cir., 219 F.2d 699, the action would not be removable to this court. However, the present action is clearly distinguishable from Direct Transit Lines in that the plaintiff in the present action is asserting a claim for money damages.

After consideration of the allegations of the plaintiff's complaint and the statements in his affidavit, and consideration of the many authorities relating to activities affecting commerce, the court concludes:

(1) That the defendants' alleged activities constitute an unfair labor practice under the Labor Management Relations Act of 1947 as amended;

(2) That the defendants' alleged activities appear to affect commerce within the meaning of that term as used in the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., and the Commerce Act, 28 U.S.C.A. § 1337.

(3) The plaintiff's present action for damages either under § 303 of the Labor Management Relations Act or as a common-law action could be maintained in

this Federal court without requiring diversity of citizenship and without respect to the amount in controversy. Therefore, plaintiff's claim of damages in an amount less than $3,000 and the absence of diversity of citizenship between the parties do not deprive this Federal court of jurisdiction.

(4) As the defendants' alleged activities appear to affect commerce, it is clear that regardless of whether the plaintiff's claim for damages is under § 303 of the Labor Management Relations Act, or whether he is claiming damages in a common-law action, the action is properly removable to this court under 28 U.S.C.A. § 1441. The plaintiff will be entitled to a trial by the court or before a jury of his alleged claim for damages for defendants' alleged wrongdoing.

(5) There being no charge of violence or fraud on the part of the defendants, this court in this action is without authority to enjoin the peaceful picketing of the plant of the Kysor Heater Company and plaintiff's place of business by the defendant union and its members, and the temporary restraining order entered by the circuit court of Wexford county, which is the restraining order of this court, should be set aside.

I now turn to plaintiff's attempt to obtain injunctive relief against defendants' alleged unfair labor practice. As the complaint in this case charges facts which would undoubtedly constitute a secondary boycott and an unfair labor practice, it is clear that the plaintiff, or, for that matter, the Kysor Company, could file complaint with the National Labor Relations Board and request the board to proceed and take action as provided in § 10 of the Labor Management Relations Act, 29 U.S.C.A. § 160, for injunctive relief.

The court accordingly denies the plaintiff's motion to remand this case to the circuit court of Wexford county and grants the defendants' motion to vacate and set aside the temporary restraining order entered August 29, 1955.

Orders will be entered in accordance with this opinion. No costs will be allowed in connection with these motions.

The defendants are granted 15 days from this date within which to file their answer to the plaintiff's complaint.