81 Ariz. 162 (1956)
302 P.2d 930
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, LOCAL NO. 469, AND LOCAL NO. 741; Ray Sanders; Frank Profirl; Jack Underwood; Associated Plumbing Contractors of Arizona, a non-profit corporation; Joe Stertz, Appellants,
v.
Louis J. MARCHESE, d/b/a O.K. Plumbing and Supply Co.; Howard C. Johnson, d/b/a Johnson Plumbing and Heating Co.; W.C. Kiesel, d/b/a Martin and Kiesel Plumbing; Maurice F. Walker, d/b/a Walker Plumbing and Heating Co.; Wilmer Robertson, d/b/a Robertson & Son Plumbing; Arizona Plumbing & Heating Company, Inc., a corporation; G.M. Flood, d/b/a Flood Plumbing & Heating; John Armer Company, Plumbing and Heating, a corporation; Whit Bishop, d/b/a Bishop Plumbing and Heating; G.M. Maupin Plumbing and Heating Co., Inc., a corporation; Sam McCullouch, d/b/a McCullouch Plumbing; and Eugene Hickey, d/b/a Hickey's Plumbing & Heating, Appellees, and Air Conditioning, Refrigeration and Sheet Metal Contractors Association of Arizona, Inc., a corporation; Climate Control Company, a corporation; Arizona York Refrigeration Company, a corporation; Harlan Diehl, d/b/a Diehl Commercial Refrigeration Company; Goettl Bros. Metal Products, Inc., a corporation; Valley Sales and Service, Inc., a corporation; Arizona Air Conditioning Company, a corporation; White Refrigeration Company, a corporation, Intervener-Appellees.
No. 6051.
Supreme Court of Arizona.
October 23, 1956.
*165 Lewis, Roca, Scoville & Beauchamp and John P. Frank, Minne & Sorenson, Phoenix, for appellants.
Jennings, Strouss, Salmon & Trask and Richard G. Kleindienst, Shimmel, Hill & Cavanagh, Stahl, Murphy & Blakley, Phoenix, for appellees.
STRUCKMEYER, Justice.
Appellants, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada with its Local Unions *166 Nos. 469, Phoenix, and 741, Tucson, comprised substantially all of the journeymen and apprentice employees engaged in the performance of plumbing services in the State of Arizona. They entered into a collective bargaining agreement with appellant, Associated Plumbing Contractors of Arizona, which agreement governs the rates of pay, hours of employment and working conditions of substantially all plumbing operations in the building and construction business in the State. Appellees were at the time of the commencement of this action engaged in the business of contracting plumbing and pipe fitting services and commodities; intervening appellees were engaged in the business of air conditioning refrigeration, sheet metal and pipe fitting. Some of appellees were originally members of the Associated Plumbing Contractors but withdrew prior to the instigation of this action; the remaining appellees and intervening appellees entered into separate agreements with the unions upon the same terms and conditions as the collective bargaining agreement between Associated Plumbing Contractors and the unions. The collective bargaining agreement between the Associated Plumbing Contractors and United Association and its Locals was modified by mutual consent on or shortly prior to June 28, 1954, to, among other things, increase the rate of pay 20¢ per hour and establish a benefit fund based on the rate of 5¢ per hour per employee. On that day the unions advised all the appellees by written communication that the modifications were also effective as to each of them retroactive to the 20th day of June, 1954.[1]
The lower court found that a conspiracy existed between the unions and the Association of Plumbing Contractors for the purpose of wrongfully compelling the appellees and intervening appellees to modify their agreements to conform to the modified agreement entered into with the Association of Plumbing Contractors. No finding was made as to the effect of appellees' business on interstate commerce, the court apparently adopting the view that since the acts complained of were breaches or attempted breaches of contract it had jurisdiction to grant the relief sought. By way of relief the court issued pendente lite orders restraining appellants from in any manner inducing, inciting, compelling or attempting to induce, incite or compel appellees and intervening appellees to accept or recognize any amendments or additions to their collective bargaining agreements and further restraining appellants from inducing, inciting, compelling or attempting to induce, incite or compel the *167 employees of appellees and intervening appellees from working or continuing to work except in accordance with the terms and conditions of the agreements.
Appellees have moved to dismiss this appeal for the reason that appellants' assignments of error do not conform to the rules of this court, Rule 5(c), citing Ramirez v. Burrell, 77 Ariz. 1, 266 P.2d 390. It is our conclusion, however, that certain of the assignments of error, particularly those questioning the want of jurisdiction of the court below are sufficient when examined in conjunction with appellants' propositions of law. In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732. Accordingly, the motion to dismiss is denied.
The controlling question which disposes of this appeal is whether the Superior Court of Maricopa County, Arizona, has jurisdiction to issue an injunction restraining the unions from attempted unilateral modifications of collective bargaining agreements under the particular circumstances of this case as above set forth and as hereafter supplemented. We think the Superior Court did not have such jurisdiction.
The construction industry is an "industry affecting interstate commerce", National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; National Labor Relations Board v. Reed, 9 Cir., 206 F.2d 184; Shore, for and on Behalf of N.L.R.B. v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678, 8 A.L.R.2d 731; United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 170 F.2d 863; Douglas v. International Brotherhood of Electrical Workers Union, D.C., 136 F. Supp. 68.
The interstate character of commerce is not decided simply by considering the quantitive effect of the activities of a particular employer.
"* * * Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." Polish Nat. Alliance of United States of North America v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509.
"The Shore Case, * * * and other authorities seem clearly to hold that what affects the building industry in any community really affects interstate commerce, even though an unfair labor practice and a stoppage of work in a particular instance may not have an immediately perceptible effect upon the flow of the whole stream of commerce. As the court said in the Shore Case, `Many small stoppages will have such effect.'" Douglas v. International *168 Brotherhood of Electrical Workers Union, supra [D.C., 136 F. Supp. 73].
This is not a case where the Federal Board has refused to accept jurisdiction upon the ground that the issue presented does not sufficiently affect the national welfare, e.g., Garmon v. San Diego Building Trades Council, 45 Cal.2d 657, 291 P.2d 1. This is a case where appellees have never sought to invoke the jurisdiction of the National Labor Relations Board and is controlled by the decisions in Garner v. Teamsters, Chauffeurs, and Helpers Local No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Building Trades Council v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Local Union No. 25 of International Brotherhood of Teamsters, etc. v. New York, N.H. & H.R. Co., 350 U.S. 155, 76 S.Ct. 227, 100 L.Ed. 166; see also Browning King Co. of New York v. Local 195, 34 N.J. Super. 13, 111 A.2d 415; Holman v. Industrial Stamping & Manufacturing Co., 344 Mich. 235, 74 N.W.2d 322; Garmon v. San Diego Building Trades Council, supra. It seems to us that the statements of the Supreme Court of the United States that an unfair labor practice within the meaning of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq., is within the exclusive primary jurisdiction of the National Labor Relations Board are unequivocal and do not fairly lend themselves to interpretation by other courts. For example:
"* * * A State may not enjoin under its own labor statute conduct which has been made an `unfair labor practice' under the federal statutes. Such was the holding in the Garner case [U.S.] supra. The court pointed out that exclusive primary jurisdiction to pass on the union's picketing is delegated by the Taft-Hartley Act to the National Labor Relations Board. * * *" Weber v. Anheuser-Busch, supra, 348 U.S. 475, 75 S.Ct. 485. (Italics ours.)
Every tribunal has the power to hear and determine its own jurisdiction, Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, and the same power is not to be denied to the National Labor Relations Board.
"* * * The corporation contends that, since it denies that interstate or foreign commerce is involved and claims that a hearing would subject it to irreparable damage, rights guaranteed by the Federal Constitution will be denied unless it be held that the District Court has jurisdiction to enjoin the holding of a hearing by the Board. So to hold would, as the government insists, in effect substitute the District Court for the Board as the tribunal to hear and determine what *169 Congress declared the Board exclusively should hear and determine in the first instance. The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. * * *" Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638.
"* * * The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal board, precludes state courts from doing so. * * *" Garner v. Teamsters, Chauffeurs, and Helpers Local No. 776, supra, 346 U.S. 491, 74 S.Ct. 166.
We fail to see how it can be otherwise, for as the Garner case further points out:
"* * * Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." 346 U.S. 485, 490, 74 S.Ct. 161, 166.
But the National Labor Relations Board "need not accept every controversy of which it has jurisdiction" and "By giving the Board discretion to accept or refuse jurisdiction, the legislative purpose must have been to give the state courts jurisdiction when the Board specifically determines that the controversy will not affect the national economy." Garmon v. San Diego Building Trades Council, supra [45 Cal.2d 657, 291 P.2d 5]. We conclude that the only appropriate forum to determine whether the Board will exercise its primary jurisdiction is in that tribunal wherein the discretion lies. As a practical matter we fail to see how it can be otherwise for assuming that it would be possible for the State Court and the Board to agree as to the facts in a particular case, is it possible to say that unanimity of opinion could be obtained as to the legal conclusion that interstate commerce or the national economy is or is not affected thereby.
The jurisdiction of the National Labor Relations Board is in part predicated on 29 U.S.C.A. § 160(a) providing:
"(a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice * * * affecting commerce. * * *"
It is an unfair labor practice for a labor organization or its agent to refuse to bargain collectively with an employer. 29 U.S.C.A. § 158(b, d). In an "industry affecting commerce" the duty to bargain collectively *170 means at least that no party to a contract shall terminate or modify such contract without giving 60 days written notice, and offer to meet and confer on the proposed modification and within 30 days notify the Federal Mediation and Conciliation Service if no agreement has been reached. 29 U.S.C.A. § 158(d) (1-3). United Elec. Radio & Mach. Workers of America (UE), Local 1113 v. National Labor Relations Board, 96 U.S.App.D.C. 46, 223 F.2d 338. Cf. International Union of Operating Engineers, Local No. 181 v. Dahlem Const. Co., 6 Cir., 193 F.2d 470. Here the appellants without any prior notification or offer to meet and confer with the appellees presumptively attempted to unilaterally modify the collective bargaining agreements by advising the appellees as follows:
"Commencing at the start of the first payroll period after June 20, 1954, the following modifications to the contract are in effect:".
Because it introduces new working conditions without following the prescribed procedures for bargaining it is in effect a refusal to bargain. United Electrical, Radio & Mach. Workers of America (UE) Amalgamated Local 259 v. Worthington Corp., D.C., 136 F. Supp. 31. We believe that the attempted modifications of the collective bargaining agreements reasonably brings the controversy within the cited sections and the exclusive primary jurisdiction of the National Labor Relations Board as an unfair labor practice.
As pointed out this is a case where the appellees have never petitioned the Federal Board for its order compelling the appellants to cease and desist from their conduct.[2] We are not deciding that the appellants are guilty of unfair labor practices, but only that if appellants did what appellees assert they did then it would constitute an unfair labor practice. We only hold that the National Labor Relations Board has the exclusive jurisdiction in the first instance to determine whether there is here an unfair labor practice within the meaning of Congress and, if so, whether such practice has resulted in a controversy affecting interstate commerce. To hold otherwise may thwart the purpose of the national policy to obtain uniform application of procedures to avoid conflicts resulting from a variety of local attitudes.
Appellees attempt to sustain the jurisdiction of the state court on the principle that the act enjoined is the breach or the attempt to induce a breach of the collective bargaining agreement and that a breach of contract leading to irreparable *171 damage is properly cognizable in a court of equity. We recognize that there are instances where a state court has enjoined a breach of a collective bargaining agreement on the theory that the Labor Management Relations Act did not preempt all violations of law pertaining to recognition and enforcement of collective bargaining agreements. Philadelphia Marine Trade Association v. International Longshoremen's Ass'n, 382 Pa. 326, 115 A.2d 419, 733, and Sheet Metal Workers Int. Ass'n, Local No. 249 v. E.W. Daniels Plumbing & Heating Co., 223 Ark. 48, 264 S.W.2d 597. But whatever the distinctions which may be drawn between those cases and the instant case we are satisfied to rest our conclusions on the basis that an unfair labor practice does not lose its characterization as such because it occurs in the violation of a written agreement and if the breach of contract also is an unfair labor practice only the National Labor Relations Board has jurisdiction in the first instance. Such breach is incidental to the violation of the public right which when enforced may obviate the necessity of seeking judicial determination of the private right. United Electrical, Radio & Mach. Workers of America v. General Electric Co., 97 U.S.App.D.C. 306, 231 F.2d 259; In re Third Ave. Transit Corp. v. Quill, 2 Cir., 192 F.2d 971; Grimes & Hauer, Inc., v. Pollock, 163 Ohio St. 372, 127 N.E.2d 203, affirming Ohio App., 119 N.E.2d 889, certiorari denied 350 U.S. 900, 76 S.Ct. 178, 100 L.Ed. 781; Bert Manufacturing Co. v. Local 810, Sup., 136 N.Y.S.2d 805; United Electrical, Radio & Mach. Workers of America (UE) Amalgamated Local 259 v. Worthington Corp., supra. Clearly appellees are attempting to by-pass the remedies created for them by Congress, and thus to circumvent its plain mandate that jurisdiction in the first instance of such matter is vested exclusively in the National Labor Relations Board. Cf. Anson v. Hiram Walker & Sons, Inc., 7 Cir., 222 F.2d 100. We think any other holding will prevent the National Labor Relations Board from exercising its jurisdiction completely freed of interference by other tribunals.
The seeming exception to the exclusively primary jurisdiction of the National Labor Relations Board recently recognized in United Automobile, Aircraft & Agr. Implement Workers of America v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162, that the state has the power to enjoin violence in labor disputes even where it constitutes an unfair labor practice does not have significance in this situation where the asserted breaches of contract have not been followed by substantial acts of unlawfulness or have not otherwise led to riotous or tumultuous conduct of sufficient magnitude to imperil the public peace.
Since as pointed out by Section 160(a) the National Labor Relations Board is empowered *172 to prevent any person from engaging in any unfair labor practice affecting commerce, it is our judgment that the injunctions issued pendente lite in this cause must be set aside as to all parties and they are hereby ordered dissolved forthwith and the case remanded for proceedings not inconsistent herewith.
LA PRADE, C.J., and WINDES, J., concur.
PHELPS, Justice, with whom UDALL, Justice, concurs (dissenting).
We dissent from the majority opinion in this case and from the reasons given for such conclusion.
In the first place, the majority opinion states that "no finding was made as to the effect of appellees' business on interstate commerce, the court apparently adopting the view that since the acts complained of were breaches or attempted breaches of contract, it had jurisdiction to grant the relief sought." The plain fact is that nowhere in the complaint or answer is it alleged that they were engaged either in interstate commerce or in a business affecting interstate commerce, and so far as the records disclose, we find no evidence was ever presented to the court on that question.
In appellants' response to the order to show cause they allege the court was without jurisdiction of the subject matter but they do not allege upon what ground they base this allegation.
On December 12, 1951 at the time the N.L.R.B. certified the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting industry as the exclusive representatives of all of the members of locals 469 (Phoenix) and 741 (Tucson), for the purpose of collective bargaining with respect to pay, wages, hours of employment and other conditions of employment, there was then no dispute of any kind between employers and employees. A five-year contract had been executed between these parties one and one-half months previously thereto, covering and settling all of these matters.
The majority opinion then makes the bold declaration as a matter of law, that the construction industry, is one affecting interstate commerce, citing among others, Shore, for and on Behalf of N.L.R.B. v. Building and Const. Trades Council, 3 Cir., 173 F.2d 678, 683, 8 A.L.R.2d 731. In that case the evidence showed that 90% of the prime contractors' business was the building of commerce and industrial projects and that one-third of its products originated outside the state of Pennsylvania. Then it stated that the value of new constructions in the United States in 1948 amounted to over ten billion dollars and followed with the dictum that the construction *173 industry in the United States affected interstate commerce. Such a pronouncement was wholly unnecessary to a determination of the issues in the Shore case.
Judge Waller wrote a dissenting opinion in that case which expresses our views. We quote:
"* * * The Board was not content to rely upon the interstate supplies used in the theatre job purchased by the general and sub-contractors, nor the amount of the supplies of the merchants sold for the theatre job, but it also included all such supplies purchased by the sub-contractors or suppliers for any purpose or any use during the entire year, 1948, and without consideration of the fact that any effect upon interstate commerce of the commodities already put into the nearly completed theatre was water over the dam. I cannot conceive that the interstate commerce in goods not used in the theatre job, or goods already placed in the job, or goods already delivered to the job, or goods used in some other job without the scope of the labor controversy here, could be substantially affected by the fact that a carpenter, his helper, and a sheet metal worker declined to work with the employees of the electrical sub-contractor. The dragging in by the Board of all of the materials purchased, regardless of time or use by the contractor, the sub-contractors, and the merchants who sold to the contractor and sub-contractors during an entire year is comparable to a razor back sow, which, in making her bed in the woods, indiscriminately rakes together all the available vegetation, leaves, sticks, and straw, into a pile large enough to allow her to take refuge therein.
"To include the purchasers of local merchants who sold material during the year to the general and sub-contractors is, in my humble judgment, too remote, and if the interstate commerce of merchants who are wholly disconnected with the controversy can be accumulated in the endeavor to show substantiality, then not only every merchant employer, from Bill Grimes at the cross roads near Yellow Rabbit to John Wanamaker of Philadelphia, whose sales are derived in part from commodities acquired from out of the state, but every employer who buys from such merchant any such materials to use in the construction of any store, whether it be that of Bill Grimes or that of John Wanamaker, would be under the jurisdiction of the Board."
As stated by Judge Waller in his dissenting opinion, if the accumulated business of all contractors in the United States may be used as a basis for determining whether *174 or not the building construction business affects interstate commerce, then every corner grocer in the United States is engaged in a business affecting interstate commerce subject to regulation by the N.L.R.B. In fact, there is scarcely a one-man business in America that would not fall within the provisions of the Taft-Hartley Act. The rule would be res judicata to hundreds of thousands of small individual businesses throughout the United States operating in isolated areas without according them their day in court.
The annotation in 8 A.L.R.2d 739 on the subject, at page 740, states that the decisions are not in accord on the subject and on page 741 et seq. it cites a number of cases in support of a contrary view. Many cases hold that contractors are engaged primarily in the construction of buildings and regardless of whether such buildings are to be used in the production of commodities which would become a part of an interstate transaction, that neither the contractor nor his employees are within the Act. See note at page 742 et seq.
The majority opinion then proceeds to argue that the appellants unilaterally modifying the contract by increasing the hourly wage of the employees twenty cents an hour, and providing for five cents for union membership benefits, in effect, refused to bargain with appellees, which constituted an unfair labor practice under the provisions of 29 U.S.C.A. § 158(b) (6), (d), and that under said act jurisdiction is vested exclusively in the N.L.R.B.
We answer this by asserting first: that if the appellees are not engaged in interstate commerce or in a business affecting interstate commerce, the N.L.R.B. has no jurisdiction in the matter even if the act here charged does constitute an unfair labor practice under provisions of 29 U.S.C.A. § 158(b)(3), or any other section of the labor act, and the burden was upon appellants to show that appellees were so engaged. The record is not before us and in the absence of a finding by the court upon this question, we are justified in presuming that no such evidence, other than the N.L.R.B. certificate, was presented.
Secondly, we assert that even if the breach of contract by appellants did constitute an unfair labor practice under the Act, the State court, nevertheless, had jurisdiction in this case to enjoin the breach of such contract. Instead of the breach of contract being incidental to the unfair labor practice as charged in the majority opinion, we assert that the unfair labor practice, if any, is rather incidental to the conspiracy alleged in the breach of the contract and was so considered by all the parties in the trial of the case before the lower court, in that the records indicate that the entire rights of appellants in the trial court were based upon the theory that those rights *175 were to be found within the four corners of the contract. A number of the cases cited in the majority opinion involved cases where the agreement expressly provides that the employees will not strike and they do thereafter strike, or where the employers expressly agree that there will be no lockouts and a lockout thereafter occurs. The courts say that to hold that a court may exercise jurisdiction in such cases would make it possible for either of the contracting parties to deprive the N.L.R.B. of jurisdiction in all cases by expressly providing against such breaches in the contract.
There is no express provision in the agreement in the instant case, that wages of employees shall not be raised during the term of the contract. On the other hand, there is a clause in the contract which provides that by mutual consent of the parties the contract may be modified. It was modified in 1952 under this provision by raising wages twenty-five cents per hour. Appellants rely upon said provision as authority for the modification thereof in 1954. The trial court found, as a conclusion of law, that this clause did not give appellants any additional rights they did not possess without such clause.
The case of United Electrical Radio & Mach. Workers of America (UE) Amalgamated Local 259 v. Worthington Corp., D.C., 136 F. Supp. 31, is cited in the majority opinion as authority for the rule that where a breach of contract also amounts to an unfair labor practice the N.L.R.B. has exclusive jurisdiction. That court held this to be the law in a proper case but said that ordinarily a breach of collective bargaining contract is not an unfair labor practice and the remedy for such a breach is to be sought from the courts or from arbitration tribunals agreed upon by the parties rather than from the N.L.R.B., citing Timken Roller Bearing Co. v. National Labor Rel. Bd., 6 Cir., 161 F.2d 949.
In the Worthington case the employer introduced new and arbitrary conditions into the existing contract as a condition of the continued employment of its employees. This was done without bargaining with the employees and the court held it constituted an unfair labor practice and held the N.L.R.B. had jurisdiction.
On page 34 of 136 F. Supp. of the opinion however, the court said:
"* * * Had the union relied solely on the contention that the correct interpretation of this provision of the contract did not authorize the suspension or discharge of Salter and Parker for the reasons relied on by the defendant, and nothing was said about refusal to bargain, even though facts existed which might support such a charge, a proper case might have been made for submission to arbitration. Textile Workers Union of America, C. *176 I.O. v. Arista Mills Co., 4 Cir., 193 F.2d 529, 533, 534. That is not, however, the present case. Here the union has chosen to make the alleged refusal to bargain an essential element of its argument that the suspension and discharge of Parker and Salter was improper. This makes the matter one exclusively for the National Labor Relations Board and not within the jurisdiction of the board of arbitration or of this court. * * *"
The above hypothesis is exactly what happened in this case. The appellants here in their response to the order to show cause, defended upon the ground that the contract itself provided for modification by mutual consent of the parties and that this gave them the right to do what they did do in raising the wages of their members twenty-five cents per hour. They denied that there was any conspiracy to violate the contract or that said contract was violated, and they nowhere alleged in their response that there was unfair labor practice in this case that deprived the court of jurisdiction to try the case. The cause was properly tried and determined by the trial court upon the theory that it was an action ex contractu. This is in accord with the Timken case supra, and the holding of the N.L.R.B. as declared by it in the matter of United Packinghouse Workers of America, 89 N.L.R.B. 310. In that case the Board held that a breach of a bargaining contract did not constitute an unfair labor practice. It said this intent was manifested by the action of a joint conference of the Senate and lower House of Congress wherein the Senate amendment to the Wagner act contained a provision making a violation of the terms of a collective bargaining agreement an unfair labor practice. The conference agreement omitted this provision for the reason that:
"* * * once parties have made a collective bargaining contract the enforcement of the contract should be left to the usual processes of the law and not to the N.L.R.B. * * *"
See General Builders Contractors Association v. Local Union 542, 542-A and 542-B, 370 Pa. 73, 87 A.2d 250, 32 A.L.R.2d 822.
In Arbitration: Aaronson Bros. Paper Corp. and Fishko, Sup., 144 N.Y.S.2d 643, 648, the Supreme Court, Special Term, New York County, handed down a decision which was unanimously affirmed by the Supreme Court, Appellate Division of N.Y., 286 App.Div. 1009, 146 N.Y.S.2d 661, in which it was held that:
"Although the board is vested with exclusive jurisdiction over charges of unfair labor practices, United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, it is without any jurisdiction or power over breaches of contract or other matters which do not *177 constitute unfair labor practices under the federal statutes. In Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, at page 491, footnote 2, [99 L.Ed. 510,] the Supreme Court said: `It is significant however, that breach of contract is not an `unfair labor practice.' A proposal to that end was contained in the Senate bill, but was deleted in conference with the observation: `Once the parties have made a collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.' H.R.Conf.Rep. 510, 80th Cong., 1st Sess. 42'. In Textile Workers Union of America, C.I.O. v. Arista Mills Co., 4 Cir., 193 F.2d 529, the union sued to enforce a collective agreement and also sought damages for its breach. Unfair labor practice charges filed by the union were pending before the National Labor Relations Board. The employer's claim that the board possessed sole and exclusive jurisdiction was overruled by the Circuit Court of Appeals, at pages 533, 534:
"`Where, however, substantive rights with respect to such matters as positions or pay are created by bargaining agreements, there is no reason why the courts may not enforce them even though the breach of contract with regard thereto may constitute also an unfair labor practice within the meaning of the act. As said by Chief Judge Jones in Reed v. Fawick Airflex Co., D.C., 86 F. Supp. 822, 823-824: `It is clear that this Court has no jurisdiction to entertain a petition for relief as to unfair labor practices. Whether acts which constitute unfair labor practices under the statute have been committed by an employer and, if so, what remedies will be prescribed for the employees are matters within the exclusive jurisdiction of the Board. * * * If, however, a particular act is the subject of an agreement between employer and union and the union sues for breach of that contract, the District Court could not be ousted of its jurisdiction to hear and determine the case merely because the act constituted not only breach of contract but also an unfair labor practice.'" (Emphasis supplied.)
Justice Jackson, speaking for a unanimous court in the case of Terminal R. Ass'n of St. Louis v. Brotherhood of Railway Trainmen, 318 U.S. 1, 6, 63 S.Ct. 420, 423, 87 L.Ed. 571, 577, said: "The Railway Labor Act [45 U.S.C.A. § 151 et seq.], *178 like the National Labor Relations Act, does not undertake governmental regulation of wages, hours, or working conditions. * * * So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions."
See also the Laburnum case, supra.
The National Labor Relations Board as frequently said by the courts, has no jurisdiction over the regulation of wages. It has no authority to award damages in case of a breach of contract or to enjoin a breach of a contract. It must resort to the Federal court to seek such relief. It seems to follow irresistibly that the instant case being tried upon the breach of contract between the parties, that the trial court had jurisdiction to give such relief as the facts of the case warranted. To hold otherwise, would result in depriving state courts of their constitutional power to adjudicate contractual rights of parties thereto and force them to abdicate such jurisdiction in favor of a non-judicial body without power in itself to give such relief.
In view of the fact that the contract in the instant case expires by its own terms, November 1, 1956, we deem it unfortunate that the far reaching pronouncement by the majority opinion is now being promulgated.
For the reasons hereinabove stated it is our view that the judgment of the lower court should be affirmed.
NOTES
[1] On the 12th day of December, 1951, the United Association and its Locals 469 and 741 were certified by the National Labor Relations Board as the exclusive representative of all the employees of the Association of Plumbing Contractors and its members for the purpose of collective bargaining.
[2] The National Labor Relations Board has ample authority to enforce its orders requiring the parties to bargain collectively. National Labor Relations Board v. Warren Co., 350 U.S. 107, 76 S.Ct. [ILLEGIBLE WORD], 100 L.Ed. ___.