399 P.2d 655

**J. J. OSS, Eddie Beckel, Hyman Weiss, Herb Skievis, Bob Jackson, Clifford Strong and Jim Kuhens, Appellants,**

**v.**

**William T. BIRMINGHAM and David L. Birmingham, Appellees.**

**No. 7370.**

En Banc.

Supreme Court of Arizona.

March 11, 1965.

Minne & Sorenson, by A. D. Ward, Phoenix, for appellants.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, by John P. Frank and John J. Flynn, Phoenix, for appellees.

LOCKWOOD, Chief Justice:

The plaintiffs in this case were lathing contractors. The defendants according to

the testimony of the plaintiff, David Birmingham, were all members constituting the Executive Board of Local 374. Defendant Oss was the financial secretary and business agent of the Union, defendant Jackson was the president, defendant Mastrangelo was the recording secretary.

David Birmingham, one of the plaintiffs herein, had been a journeyman lather and a member of Local 374. In February of 1957, he went into business with his father, plaintiff William Birmingham, as a lathing contractor. An Arizona contractor's license was required for any person to act as a lathing contractor. In order to hire members of Local 374, the plaintiffs were required to obtain a permit or "boss card" from the Union which the Union would grant only after the permittee had obtained the contractor's license.

Local 374 issued the plaintiff, David Birmingham, a "permit" or "bosscard" on February 14, 1957. This "Contractor's Resignation Certificate" "granted" to Dave Birmingham:

"the privilege of becoming a lathing contractor, in accordance with the constitution of the International Union and the laws of our Local which require him to resign his membership upon becoming a lathing contractor.

"He is not permitted to use tools of the trade but may contract work wherever he wishes with the understanding that he must always conform to the laws, working rules and wage scale of the jurisdiction of the local in which his work is done."

This "Contractor's Resignation Certificate" was signed by Robert L. Jackson, President, and John J. Oss, Secretary, of Local 374.

David Birmingham executed a labor agreement between the Lathing Contractors and Plastering Contractors signatory thereto and Local 374.

Article XXII of this agreement states: "This agreement shall remain in effect from the date of June 1, 1955, to May 31, 1959. Either party desiring to terminate the Agreement or to change its terms shall notify the other in writing not less than sixty (60) days prior to June 1, 1959. If such notice is not given, this Agreement shall be renewed for the period from June 1, 1959, to May 31, 1960, and from year to year thereafter until terminated at the end of a yearly period and notice in writing by either party delivered to the other not less than sixty (60) days before the end of such yearly period."

In October of 1957, defendant Oss claimed that Birmingham's union permit to contract had been obtained by subterfuge. After an Executive Board and Membership Meeting on October 10, 1957, the Local did not continue to deal with or bargain

collectively with David Birmingham as an employer.

From the testimony of David Birmingham, it appears that at the time the complaint was filed herein, on December 26, 1957, the plaintiffs were aware of the controversy between themselves and Local 374 over the union's permit. The trial court found that it had not been obtained by subterfuge or false pretenses. Birmingham also testified the defendants had said that they would black-ball the plaintiffs and put them out of business and that the defendant Oss, the financial secretary and business agent of Local 374, had said that the Union was going to remove the plaintiffs' employees, all of whom were members of Local 374, from their jobs with the plaintiffs.

The lower court found that four days prior to the date set forth in the complaint as the date on which the allegedly defamatory statements which form the basis of the charge in the complaint were made, the defendant Oss wrote a letter to the Phoenix Building and Construction Trade Council stating that the Union had taken action against the plaintiffs "for working unfair and deterimental to the trade." The letter asked the Council to put the plaintiffs on the "official unfair list." It was against this background of controversy with the Union that the plaintiffs filed the complaint herein.

The complaint charged that defendants who "at all times * * * were members of the Executive Board of Local 374, the Lathers Union" slandered plaintiffs by making statements concerning them to plaintiffs' employees who "were all union men" to the effect "he is unfair". The plaintiffs alleged in their complaint that this statement caused their employees to cease working for them and that plaintiffs thereby lost their business as lathing contractors.

Paragraphs III and V of the complaint read as follows:

"That on or about the 15th day of October, 1957, and thereafter, the defendants, and each of them, stated to certain persons and employees of the plaintiffs, concerning the plaintiffs, that 'he is unfair'.

"That by reason of the committing of the said grievances by the defendants, and each of them, to wit: 'He is unfair,' the union employees of the plaintiffs were persuaded, and did, terminate their employment with these plaintiffs."

In their answer the defendants asserted as an affirmative defense that if the statement "he is unfair" was stated by any of the defendants it was

"stated or communicated to fellow labor unionists having an interest common to that of the defendants, and for

the purpose of protecting or advancing that interest, namely, that of encouraging compliance with the constitutions, bylaws, contracts and policies of Local No. 374 of the Lathers Union, Phoenix Building and Construction Trades Council, and other unions."

The trial court found the phrase "he is unfair" was defamatory, and gave judgment for plaintiffs and against the defendants, (except defendants Mastrangelo and Horton, against whom plaintiffs voluntarily dismissed the complaint).

During the course of the trial below, the defendants moved to dismiss the case on the ground that the subject matter of the litigation was within the exclusive jurisdiction of the National Labor Relations Board and that the superior court was therefore without jurisdiction of the subject matter.

Although defendants list twenty-one assignments of error, we need consider only one—that the exclusive jurisdiction of the subject matter was in the National Labor Relations Board.

This Court in 1956 in United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry of United States and Canada, Local No. 469, and Local No. 741 v. Marchese, 81 Ariz. 162, 302 P.2d 930, discussed this problem of jurisdictional pre-emption by the National Labor Relations Board in cases involving questions of unfair labor practices within the meaning of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. We held that the statements of the United States Supreme Court that unfair labor practices were within the exclusive primary jurisdiction of the National Labor Relations Board were unequivocal. We also held that every tribunal has the power to hear and determine it own jurisdiction, and that power to make this determination was within the pre-empted activities of the National Labor Relations Board. We cited Garner v. Teamsters, Chauffeurs, and Helpers Local No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, to the effect that Congress had decided that centralized administration of procedures was necessary to obtain uniform application in order to avoid diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. We concluded

"that the only appropriate forum to determine whether the [Labor Relations] Board will exercise its primary jurisdiction is in that tribunal wherein the discretion lies."

We also held that among the other issues for the National Labor Relations Board to determine is the question of whether or not interstate commerce is involved, as follows:

"We * * * hold that the National Labor Relations Board has the exclusive jurisdiction in the first instance to determine whether there is * * * an unfair labor practice within the meaning of Congress and, if so, whether such practice has resulted in a controversy affecting interstate commerce."

We also said that parties may not attempt successfully to

"by-pass the remedies created for them by Congress, and thus * * * circumvent its plain mandate that jurisdiction in the first instance of such matter is vested exclusively in the National Labor Relations Board."

We concluded that the trial court could not take jurisdiction because to do so would "prevent the National Labor Relations Board from exercising its jurisdiction completely freed of interference by other tribunals."

The conclusions of this Court in that case were completely borne out three years later by the United States Supreme Court, in 1959, in San Diego Building Trades Council Millmen's Union Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775, which remains the leading case on this question of pre-emption of jurisdiction by the National Labor Relations Board.

The United States Supreme Court, in a now famous statement said:

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

The only exceptions to the rule enunciated above exist when vital state interests are in jeopardy. That is when the conduct involved is:

"marked by violence and imminent threats to public order. * * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overriden in the absence of clearly expressed congressional direction."

The court cited as cases illustrating this exception, International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030; United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025; Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162.

Congress also recognized this doctrine of pre-emption of the state court's jurisdiction by the National Labor Relations Board by giving the state courts jurisdiction *after* the Board has refused jurisdiction under certain circumstances, when Congress, in 1959 amended 29 U.S.C. § 164 as follows:

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction." As amended Sept. 14, 1959, Pub.L. 86–257, Title VII, § 701(a), 73 Stat. 541.

Since this matter has never been presented to the National Labor Relations Board, we do not assert that the above Congressional enactment has any bearing on the facts herein except to illustrate the Congressional recognition of pre-emption and its attempt to assure state jurisdiction if the Board refused jurisdiction.

The present action in slander was brought by the plaintiff against the Business Agent and members of the Executive Committee of Local 374 of the Wood, Wire, and Metal Lathers' Union, all of whom were agents of the union. The record discloses no allegation of violence or imminent threats to public order. Thus in the words of the United States Supreme Court in the Garmon case, supra: "In the present case there is no such compelling state interest." Indeed, as we said in the Marchese case, supra, these exceptions do

"not have significance in this situation where the * * * (unfair labor practices) have not been followed by substantial acts of unlawfulness or have not otherwise led to riotous or tumultuous conduct of sufficient magnitude to imperil the public peace."

The defendants argue that the labor union's own conduct was, "clearly, arguably, or potentially" subject to the National Labor Relations Act and therefore, the trial court was without jurisdiction since its jurisdiction was pre-empted by the union's own acts of violating its collective

**248**

bargaining agreement. This was arguably an unfair labor practice pursuant to 29 U.S.C. § 158(b) and 29 U.S.C. § 158(d).

Section 8, in part: (29 U.S.C. § 158(b) and 158(d)

"(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

"(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees \* \*;

"(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, \* \* \* or any question arising thereunder, \* \*: *Provided,* That where there is in effect a collective bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, \* \* \*;

\* \* \* \* \* \*

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later: \* \* \*."

The defendants claim that when the plaintiffs alleged that the defendants, in declaring David Birmingham to be unfair and inducing or persuading the plaintiffs' employees to quit their jobs, the plaintiffs were saying that the Union, through the defendants, undertook the resolution of the problem in bad faith in violation of 29 U.S.C. § 158(d). The defendants also argue that the Union in calling the plaintiffs' employees off the job, no longer recognized the plaintiffs as a "contractor" with which the Union was to deal. The defendants claim that this act unilaterally terminated the collective bargaining agreement without any notice whatsoever, in violation of 29 U.S.C. § 158(d) (1). The defendants claim that their own acts are clearly arguably subject to the exclusive jurisdiction of the National Labor Relations Board pursuant to the decision of the United States Supreme Court in San Diego Building Trades Council v. Garmon, supra, and United Association of Journeymen v. Marchese, supra.

The record, in this action brought by the plaintiffs for the tort of defamation, discloses that these acts of the defendant

were "arguably" subject to 29 U.S.C. § 158 and the state courts thus must defer to the exclusive "competence of the National Labor Relations Board" and the jurisdiction of the superior court of the State of Arizona is pre-empted pursuant to 29 U.S.C. § 158(b) (3) and (d) in this tort action.

We find that the union's activities are arguably subject to § 8 of the Act and therefore the National Labor Relations Board has pre-empted the jurisdiction of the superior court of Arizona.

Judgment reversed.

STRUCKMEYER, V. C. J., and BERNSTEIN, UDALL and McFARLAND, JJ., concur.