NATIONAL LABOR RELATIONS
BOARD
v.
DIXIE TERMINAL CO.
No. 12009.

United States Court of Appeals
Sixth Circuit.
Feb. 26, 1954.

Jerome H. Brooks, Cincinnati, Ohio, Geo. J. Bott, David P. Findling, A. Norman Somers, Arnold Ordman, Myron S. Waks, Washington, D. C., on brief, for petitioner.

J. Mack Swigert, Cincinnati, Ohio, for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Board seeks enforcement of its cease and desist order of February 18, 1953. The order also requires the respondent to reinstate and make whole for loss of pay two employees, Walter J. Cinser and James Ross, who the Board found were discharged because of union activities, in violation of Section 8(a)(3) of the National Labor Relations Act, § 158(a) (3), Title 29 U.S.C.A.

Respondent owns and operates The Dixie Terminal Building in Cincinnati, Ohio, space in which is leased to tenants engaged in numerous enterprises. The building consists of a north section and a south section, which are operated as a single entity. The north section is a 10-story structure occupied by 126 tenants, including ticket offices of a number of interstate railroads and branch offices of nationally known concerns, which are engaged in interstate commerce. Practically all of the space in the south section is occupied by the Cincinnati, Newport and Covington Railway, which uses the section as a terminal for its interstate bus operations, and by the Western Union Telegraph Company. The services which it furnishes to the tenants include elevator operators and service employees.

Cinser, an elevator operator and assistant starter, and Ross, a service employee and freight elevator operator, participated in union activities in the latter part of November 1951 for the purpose of organizing respondent's employees. On January 12, 1952, respondent's building manager commenced a series of interviews with individual employees, including Ross, who were called to his private office, questioned as to their union sympathy and membership, and asked about which employees were soliciting membership. Two of these employees indicated that Cinser had given them union cards to sign. Promptly thereafter both Cinser and Ross were discharged. Following its usual custom, respondent gave neither of them any explanation for its action. At the hearing before the Board, respondent contended that Cinser was discharged in order to avoid a "morale" problem among its employees, and Ross was discharged because of his refusal to take over the job of starter of a passenger elevator, to which the building superintendent assigned him. The Board rejected these defenses and found that both of them were discharged because of their union activities. It also found that respondent's interrogation of its employees interfered with their rights under Section 8(a)(1) of the act.

Respondent contends that the operation of a general office building is local business which does not affect commerce, and therefore is not subject to the jurisdiction of the Board. Section 10(a) of the Labor Management Relations Act, Section 160(a), Title 29 U.S.C.A., empowers the Board "to prevent any person from engaging in any unfair labor practice * * * affecting commerce." Section 2(7) of the Act, Section 152(7), Title 29, U.S.C.A., defines the term "affecting commerce" as "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." It is well settled that an employer may be subject to the Act although not himself engaged in interstate commerce. N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S. Ct. 668, 83 L.Ed. 1014. Also the fact that activities are intrastate in character, does not prevent those activities from "affecting commerce." N. L. R. B. v. J. L. Hudson Co., 6 Cir., 135 F.2d 380, certiorari denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439; N. L. R. B. v. Vulcan Forging Co., 6 Cir., 188 F.2d 927, 930. In the Vulcan Forging Co. case we said: "Activities, intrastate in character when separately considered, fall within the ambit of control by Congress, if so closely and substantially related to interstate commerce that their control is essential or appropriate for its protection from burden or obstruction." Compare: Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865. In our opinion, the work of respondent's employees, although local in nature, had such a relationship to the interstate business of the tenants as to affect commerce. A labor dispute involving such employees would tend to burden or obstruct the free flow of commerce of the tenants therein.

Respondent relies upon 10 East 40th St. Bldg. v. Callus, 325 U.S. 578, 65 S.Ct.

1227, 89 L.Ed. 1806, which in distinguishing but not overruling Kirschbaum v. Walling, supra, held that running an office building, exclusively devoted to the purpose of housing all the usual miscellany of offices, had many practical differences from operating a manufacturing building such as was involved in the Kirschbaum case. It pointed out that in each case it was a question of degree in determining whether the particular activities were necessary to the production of goods for commerce. See: Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603, which was decided subsequent to the decision in the Callus case.

The Callus case involved the Fair Labor Standards Act, not the National Labor Relations Act. Jurisdiction under the Fair Labor Standards Act is dependent upon an employee engaging "in the production of goods for commerce". Sections 206, 207, Title 29, U.S.C.A. Under the National Labor Relations Act jurisdiction exists if the respondent engages in an unfair labor practice "affecting commerce." Section 160(a), Title 29, U.S.C.A. Jurisdiction under the Labor Act is broader than jurisdiction under the Fair Labor Standards Act.

In the present case, we do not have a typical metropolitan office building, such as was involved in the Callus case. Part of the building is used by the interurban bus line and the telegraph company in their actual physical interstate operations instead of the usual operations incident to leased office space.

■ We recognize that the Board has declined to assume jurisdiction in cases involving commercial hotels, Hotel Association of St. Louis, 92 N. L. R. B. 1388, and in certain taxicab cases, Taxi Transit Co., 102 N. L. R. B. 45, but these cases were not rulings that jurisdiction did not exist. Failure to exercise jurisdiction does not result in losing jurisdiction. United States v. Morton Salt Co., 338 U.S. 632, 647–648, 70 S.Ct. 357, 94 L.Ed. 401.

■■ On the merits, we are of the opinion that the findings of the Board that the respondent interfered with the rights of its employees in violation of Section 8(a)(1) of the Act, and that its discharge of Cinser was for union activity in violation of Section 8(a)(3) of the Act are sustained by substantial evidence on the record considered as a whole. N. L. R. B. v. F. H. McGraw & Co., 6 Cir., 206 F.2d 635, 640; N. L. R. B. v. Alco Feed Mills, 5 Cir., 133 F.2d 419; Joy Silk Mills v. N. L. R. B., 87 U.S.App.D.C. 360, 185 F.2d 732, 743–744; N. L. R. B. v. Ford, 6 Cir., 170 F.2d 735, 738–739. We are also of the opinion that the discharge of Ross was justified by Ross's refusal to accept his assignment of duty. The fact that he was participating in organizing the union does not prevent his discharge for cause. N. L. R. B. v. West Ohio Gas Co., 6 Cir., 172 F.2d 685, 688; N. L. R. B. v. Mylan-Sparta Co., 6 Cir., 166 F.2d 485, 491.

The Board's Order is amended so as to eliminate from Paragraph 2(a) and 2(b) thereof the inclusion of James Ross, the notice to be posted is similarly amended, and enforcement is decreed of the Order as so amended.