**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**PHAOSTRON INSTRUMENT AND
ELECTRONIC COMPANY,**
Respondent.

No. 19505.

United States Court of Appeals
Ninth Circuit.

April 27, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Michael R. Brown, N. L. R. B., Washington, D. C., for petitioner.

Erwin Lerten, Potruch & Lerten, Beverly Hills, Cal., for respondent.

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON, District Judge.

ELY, Circuit Judge:

The National Labor Relations Board seeks full enforcement of its Order (146 N.L.R.B. No. 124), issued after a hearing and its determination that Respondent violated Section 8(a) (3) and (1) [1] of the National Labor Relations Act as amended (61 Stat. 136, 29 U.S.C. § 151 et seq.). The violation is claimed to rest upon Respondent's terminating the employment of eight employees and its refusal, despite timely request, to reinstate them.

In March or April of 1963, a Union, Communication Workers of America, AFL-CIO, commenced an organizational campaign at Respondent's manufacturing premises, and authorization cards were signed by five of the eight employees whose employment subsequently terminated. At an organizational meeting conducted on April 24, 1963, approximately twenty-five to thirty of Respondent's employees attended, and upon being requested to indicate whether or not they

---

1. Section 8(a) "It shall be unfair labor practice for an employer—

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7."

Section 7 provides, in part, that employees shall have the right " * * * to engage in * * * concerted activities for the purpose of * * * mutual aid or protection." 29 U.S.C.A. § 157.

desired to be members of the Union's "Organizing Committee," six of the particular eight employees joined the Committee. Another of the eight joined the Committee at a second meeting, held on April 30, 1963, and the last of the eight joined at a third meeting, held on May 6, 1963.

On May 8, 1963, the President of Respondent visited a portion of Respondent's premises designated as Building #4 to investigate the work in progress. After watching, for a short time, the work of one Louise Martel, a member of the Organizing Committee but not one of the eight who are involved in the Board's Order, the President summoned Martel's supervisor and complained that Martel was doing her work improperly. The President repeated his criticism to Martel's leadlady, and, as he began to walk away, he remarked that Martel would have to be properly trained or replaced. The President returned in a moment, whereupon there was a heated exchange of words culminating with Martel's gathering together her personal possessions and walking away from her station of work. Three of the eight employees, who had been working in close proximity to Martel, exchanged words with respect to leaving work in support of Martel and departed Building #4 with Martel. The four did not leave the building through the usual exit where time clocks were located but proceeded to Building #2 without checking out and without leaving the plant. Reaching Building #2, the four advised employees there as to why they had left their stations of work. There was a conversation to the effect that the President had abused Martel and that the three who had accompanied her from Building #4 were protesting in her behalf. The President had followed the group of four into Building #2, and seeing the gathering in which the conversations were taking place, he ordered the four employees from Building #4 to "get out." As these women left, they were joined by four employees from Building #2. Meanwhile, another employee whose station of work

was located in Building #4, and who had heard the last portion of the argument between Martel and the President, decided, shortly after having seen her four companions leave the building, that she, too, would depart. She left by means of the usual exit but did not "punch out" on the time clock which was situated there.

Leaving the plant, the nine employees joined together on the sidewalk. One of them telephoned the Union's office and requested that union representatives join them at the plant. Other employees, who shortly afterward had left the plant for a "coffee break" and joined the nine, were dispersed upon orders of the President, but the nine remained on the outside. Two union representatives soon arrived and were told by various ones of the group that the eight, other than Martel, had "stood up" for her and had "walked out" in her support. Upon being told by them that they wished to return to work, the two union representatives advised that they would seek a conference with the President, and though being challenged as to their status to speak for the nine, they undertook to persuade the President to permit the women to return to work. In the course of a discussion which ensued, the union representatives urged the President to permit the employees to return to work and the President insisted that in his then state of mind he considered that the nine had "quit" their jobs, that they were unemployed, and that he did not desire their type of workers in his employ.

While immediately after the walkout, some of the nine employees were replaced by transferees from other departments, and two of them, from "within a day or two" to a "working week" were replaced by newly hired employees, none of the transferees from other departments was designated as a permanent replacement.

The foregoing facts, in our opinion, support the Board's conclusion that Respondent violated the Act by terminating the employment of the eight em-

ployees and by subsequently refusing to reinstate them.

Respondent first contends that it was denied a fair and impartial hearing. This contention arises from the Trial Examiner's refusal to permit Respondent to attempt to prove by four witnesses that at union meetings conducted prior to the walkout there was no discussion with respect to agreement by members of the Union's Organizing Committee to support one another. Before offering such proof by the four witnesses, Respondent had already presented evidence to the same effect, and the Trial Examiner's rejection of the offered testimony was based upon his expressed opinion that it was cumulative.

█ █ In the conduct of any judicial or quasi-judicial hearing, reasonable discretion must be vested in the officer who guides the course of the proceedings. Bethlehem Steel Co. v. N. L. R. B., 74 App.D.C. 52, 120 F.2d 641, 654 (D.C. Cir. 1941), Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Poarch, 292 F.2d 449, 452 (9th Cir. 1961). We could not find an abuse of such discretion absent a strong showing of prejudice to the litigant making the charge of such abuse. In the case at bar, we find it unnecessary to make a determination in this respect. This is so because we agree with the Trial Examiner and with the Board that under the facts at hand, the eight employees were engaged in protected activity regardless of whether or not there had been a prior pledge or agreement for mutual support. In N. L. R. B. v. Holcombe, 325 F.2d 508 (5th Cir. 1963), the court, in holding that employee action was protected, stated, at page 511, "There can be no substantial doubt but that normally a *spontaneous* or planned walk-out in protest against the firing of another employee is protected activity." (Emphasis ours.) It has been held in numerous cases that employers are prohibited from discharging employees who, for mutual aid or protection to other employees, engage in spontaneous strikes or cessation of work. See N. L. R. B. v.

Delsea Iron Works, Inc., 316 F.2d 231 (3rd Cir. 1963), N. L. R. B. v. Solo Cup Co., 237 F.2d 521, 526 (8th Cir. 1956), N. L. R. B. v. Kennametal, Inc., 182 F.2d 817, 819, 19 A.L.R.2d 562 (3rd Cir. 1950). Here, regardless of whether or not there had been any prior agreement among the nine employees for mutual support, it is clear from all the circumstances that there was a spontaneous agreement for concerted action by the eight in support of Martel, their fellow worker.

█ Contrary to Respondent's insistence, there is ample evidence, with its inferences, to support the Board's conclusion that the employees had no intention of permanently quitting their jobs. Supporting this conclusion are the uncontradicted facts that none of the employees gave formal notice of quitting or punched out on time clocks, and none requested final checks. Moreover, they all indicated to the union representatives their desire to resume work, and they remained in the vicinity of Respondent's plant throughout the entire day, even though they had been informed of the President's insistence that they would not be reinstated at that time. Our court will not disturb the Board's determination, upon conflicting evidence, of a factual dispute as to whether employees have quit of their own accord or have been discharged. N. L. R. B. v. Hazen, 203 F.2d 807 (9th Cir. 1953).

█ Whether or not the President's treatment of Martel violated Respondent's obligations under the National Labor Relations Act is immaterial. The Board's conclusion that the eight employees believed that Martel had been unfairly treated is sufficient to protect their concerted activity. It was said in N. L. R. B. v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, at 344, 58 S.Ct. 904, 910, 82 L.Ed. 1381, 1389, that "The wisdom or unwisdom of the [employees], their justification or lack of it" is immaterial to the determination of their rights.

This court has held that even when an employee is properly discharged for in-

subordination, a strike designed to accomplish his reinstatement is a protected concerted activity. N. L. R. B. v. Globe Wireless, Ltd., 193 F.2d 748 (9th Cir. 1951). In N. L. R. B. v. McCatron, 216 F.2d 212 (9th Cir. 1954), cert. den., 1955, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738, strikers acted in the good faith but mistaken belief that a fellow employee, whose reinstatement they sought, had been discharged because of union activities. Our court held that the walkout was a concerted activity which was protected by Section 7 of the Act.

It is claimed by the Respondent that inasmuch as the Union was not the statutory representative of the employees, the eight employees did not, and could not, effectively request reinstatement through the union representatives. In N. L. R. B. v. I. Posner, Inc., 304 F.2d 773 (2nd Cir. 1962), a similar contention was characterized as "specious." The Board has determined, upon adequate evidence, that the employees desired to return to work and made the desire known to Respondent through two union representatives. The identities or capacities of the spokesmen who communicated the desire are of no particular significance.

Respondent produced testimony to the effect that one of the employees, Lala Pacheco, had stated, while she was on the sidewalk outside the plant, that she had "quit." Pacheco denied making the statement, and Respondent offered an affidavit of another employee who claimed in the affidavit to have heard Pacheco make the statement. The General Counsel's objection to the introduction of the affidavit was properly sustained, whereupon Respondent requested that the hearing remain open until the employee who had signed the affidavit could be produced as a witness. It was claimed that she was unavailable because of critical illness in her family. The Trial Examiner denied the request upon the ground that such testimony, if available, would be merely corroborative. Respondent made no showing as to when the absent witness would be available for the giving of her testimony, and for this reason alone, the Trial Examiner acted within his sound discretion in denying a request which can be fairly interpreted as a motion for postponement or suspension of the hearing for an indefinite time. Moreover, the Examiner concluded that even should it be conceded that Pacheco stated that she had "quit," such statement should be interpreted, in the light of all the circumstances, to relate only to a temporary cessation of work and not to permanent resignation. Since such a conclusion is supported by facts which we have already related, no substantial prejudice was worked against Respondent by the Examiner's refusal to continue the hearing. See N. L. R. B. v. Washington-Oregon Shingle Weavers' Dist. Council, 211 F.2d 149 (9th Cir. 1954).

Entirely without merit is Respondent's contention that the findings and conclusions of the Trial Examiner "evidence a bias and hostility." It has been pointed out by the highest authority that rejection of an opposed view, even when total, "cannot of itself impugn the integrity or competence of a trier of fact." N. L. R. B. v. Pittsburgh S. S. Co., 1949, 337 U.S. 656, 659, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602, 1606.

Paragraphs 1(a) and (b) of the Board's Cease and Desist Order contain the phrase "in any other manner," the effect of which is to broaden the scope of the orders to an extent which is not justified by the history of the dispute. Morrison-Knudsen Co., Inc. v. N. L. R. B., 276 F.2d 63 (9th Cir. 1960), cert. den., 1960, 366 U.S. 909, 81 S.Ct. 1082, 6 L.Ed.2d 234, N. L. R. B. v. Mrs. Fay's Pies, 341 F.2d 489 (9th Cir. 1965). In the Decree, the words "in any other manner" in paragraphs 1(a) and (b) will be deleted; otherwise,

The Petition for Enforcement is granted.