HAGOPIAN & SONS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 17677.

United States Court of Appeals
Sixth Circuit.

June 7, 1968.

---

■■■■■■■■■■■■■■■■■

Meyer W. Leib, Detroit, Mich., for petitioner; Leib & Leib, Detroit, Mich., on the brief.

Leon Kestenbaum, Atty., National Labor Relations Board, Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Marcus W. Sisk, Attys., National Labor Relations Board, Washington, D. C., on the brief.

Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and WEINMAN,* District Judge.

CELEBREZZE, Circuit Judge.

Hagopian & Sons, Inc., petitions this Court to review and set aside an order of the National Labor Relations Board entered on December 20, 1966, and the Board has cross-petitioned for enforcement of its order. The Board found that the Petitioner violated Section 8(a) (1) of the Labor-Management Relations Act, 29 U.S.C. § 158(a) (1), on three separate occasions: (1) by discharging John Mason, Jerry Connell, Raymond Jackson, and Tom Tucker for engaging in concerted activity that is protected by Section 7 of the Act, 29 U.S.C. § 157, (2) by delaying the early delivery of John Mason's vacation pay because of his union activities, and (3) by giving its employees premium pay to discourage union organization. The Board entered an order requiring appropriate postings and the reinstatement of the discharged employees with back pay. Hagopian & Sons has contested these findings and the order of the Board and also asserts that it was denied a full and fair hearing because of the excessive bias of the Trial Examiner. We deny enforcement of the Board's order.

The events pertinent to a decision in this case occurred between December 2nd and December 21, 1965. Hagopian & Sons is a Michigan corporation engaged in the business of cleaning, renovating, maintaining, and installing carpets. Although its employees were not organized and had no certified exclusive bargaining representative during the relevant period, the record discloses that certain employees were concerned with getting time-and-a-half pay for overtime and Saturday work. On December 2nd, Mason and Connell requested premium pay for themselves and Tucker and Jackson for work to be done on Saturday, December 4th, and were told that "[the employer] would see about it." When Mason, Connell, and Tucker reported for work on Saturday, however, they were told that they would not receive premium pay. In retaliation, they refused to go to work and, as a group, punched out on the time clock, leaving word that they would be at a nearby restaurant. Edgar Hagopian, the general manager of Hagopian & Sons, met the three at the restaurant and, since the job was a major one, promised them time-and-a-half for that Saturday and promised to discuss future Saturday work at a meeting of employees set for Wednesday, December 8th.

A snowstorm caused the postponement of the Wednesday meeting, and since they were dissatisfied by the delay, Mason, Connell, Tucker, and Jackson met the next day with Edward Powers, the business representative of Resilient Floor Decorators Local No. 2265, United Brotherhood of Carpenters and Joiners of America, AFL–CIO (hereinafter "Union"), and signed union authorization cards. Later that day Mason and Connell met with Edgar Hagopian, who explained the company's objections to granting premium pay but announced no final decision. At this meeting Edgar Hagopian agreed to give Mason his vacation pay early, although it was not due until December 16th. Mason received his vacation pay on December 15th. Between the time of Mason's request for his vacation pay and December 15th, Edward Powers met with Edgar Hagopian to demand recognition of the Union as the bargaining repre-

* Honorable Carl A. Weinman, Chief Judge, United States District Court, Southern District of Ohio, sitting by designation.

sentative of the carpet installers.[1] Powers stated that he had no interest in representing the other employees of Hagopian.

On December 20th, Mason became involved in a dispute with Arthur Papazian, Respondent's Vice President, in charge of operations, concerning the assignment of his helper for the day's work. When they were unable to resolve their differences, Mason clocked-out and was joined by Connell, Jackson, and Tucker. They proceeded directly to call Edward Powers, who advised them to return to work. They were not permitted to return, however; for when they attempted to clock-in about twenty or thirty minutes after walking out, they were informed that as far as Hagopian & Sons was concerned they had voluntarily quit. The next day Hagopian & Sons granted premium pay for Saturday work to all of its hourly-paid employees.

■ The Board found that Edgar Hagopian delayed the delivery of Mason's vacation pay from December 10th to December 15th in retaliation for Mason's involvement in the Union and that the granting of premium pay to all hourly-paid employees for Saturday work was designed to discourage Union organization. We find no evidence in the record to support these conclusions of the Board.

■ Hagopian did give Mason his vacation pay early. The record indicates that any delay in Mason's receipt of his check was caused by Mason's inability to get together with Edgar Hagopian during working hours, not by Union bias; therefore we need not decide whether an employer's withholding of a promised favor can in any situation be a violation of Section 8(a) (1). Likewise, the granting of premium pay was not a violation of the Act. The carpet installers were fired on December 20th, and no showing was made

that organization of the other employees was imminent. In fact, the contrary was shown; Powers had disclaimed any interest in Hagopian's remaining employees. For an employer's grant of benefits to be a violation of the Act, it must be shown that the benefits were granted to discourage an imminent union organization effort. Cf. National Labor Relations Board v. Cleveland Trust Co., 214 F.2d 95, 100 (6th Cir. 1954). Otherwise any attempt by an employer to improve the conditions of his employees would violate the Act.

■ Respondent's refusal to allow Mason, Connell, Jackson, and Tucker, to come back to work after their walk-out on the 20th presents a more difficult problem. In explaining his reason for not taking the four men back, Edgar Hagopian said:

"Well they had dictated to us on December 4th. They had dictated to us in refusing in the past to work with people that had been assigned to them, making comments to the effect that they didn't want to work with this particular person or that particular person. They didn't want to do this particular job or that particular job. That was a constant sort of thing that was going on. In fact, so much so that we had a company meeting approximately one month prior to this incident, and the subject of that particular meeting was who was the boss. This was the subject of the meeting.

\* \* \* \* \* \*

"And John Mason was named at that meeting in front of the rest of the employees as one of the individuals who constantly refused to do as management advised or informed him to do."

So far as the Labor Act is concerned, an employer may discharge an employee for no reason or for any arbitrary reason

---

1. Mason, Connell, Jackson and Tucker were the primary carpet installers. Hagopian & Sons had numerous other employees for cleaning and repairing carpets and some of these employees assisted in installation at various times. But the appropriateness of the unit is not contested and no Section 8(a) (5) violation is charged. The demand for recognition is noted only because the Board relied upon it to show discriminatory action by Hagopian.

with one exception: he may not discharge an employee for engaging in protected activity. From his statement it is clear that Hagopian's action was motivated at least in part by the walkouts of the four men on December 4th and 20th; so if these walk-outs were protected activities, the refusal to reinstate the men was a violation of the Act. National Labor Relations Board v. Barberton Plastics Products, Inc., 354 F.2d 66 (6th Cir. 1965).

██ Among other activities, the Act protects " * * * concerted activities for * * * mutual aid or protection * * * " concerning disputes over conditions of employment. 29 U.S.C. §§ 157 and 152(9). Without a doubt the walkout on December 20th was concerted activity for mutual aid and protection.[2] Connell, Jackson, and Tucker observed the entire argument between Mason and Papazian and were aware of the nature of the dispute; and each testified that he clocked-out until the matter of assignment of helpers was settled. That no union activity was involved and that Mason was the only one with an immediate stake in the outcome of the dispute are immaterial considerations in determining whether the activity is protected by the Act. National Labor Relations Board v. City Yellow Cab Company, 344 F.2d 575 (6th Cir. 1965). Likewise, it was unnecessary to show a prior agreement between the four strikers in order to prove that the walk-out was concerted. National Labor Relations Board v. Guernsey-Muskingum Electric Co-Operative, Inc., 285 F.2d 8 (6th Cir. 1960); National Labor Relations Board v. Phaostron Instrument Electronic Co., 344 F.2d 855 (9th Cir. 1965).

██ But to be protected by the Act, the concerted activity in this case must have been directed toward a dispute concerning conditions of employment; so the crucial inquiry is whether the assignment of helpers is a condition of employment. No one contests that the establishment of a work schedule and the allocation of personnel is properly a management function. The inquiry cannot end with that determination, however; for, when the exercise of a function of management affects conditions of employment, the employees have a right to protest the particular action taken. Fibreboard Paper Products Corporation v. National Labor Relations Board, 379 U.S. 203, 85 S. Ct. 398, 13 L.Ed.2d 233 (1964). Clearly, a determination that helpers are not to be assigned at all for particular jobs affects conditions of employment. The question in this case, however, is more narrow: Is the assignment of a specific person as a helper a proper subject for employee protest action?

Very few cases have dealt with this exact problem. This Court held in National Labor Relations Board v. Guernsey-Muskingum Electric Co-Operative, Inc., 285 F.2d 8, 12 (6th Cir. 1960), that the appointment of a foreman was a proper subject for concerted activity where the men serving under the newly appointed foreman thought that he did not understand the work and believed that his inexperience would make their job more onerous. In National Labor Relations Board v. Phoenix Mutual Life Insurance Co., 167 F.2d 983, 6 A.L.R.2d 408 (7th Cir. 1948), the Seventh Circuit held that insurance salesmen could properly join in concerted action to influence the assignment of a cashier to their district office, where the capability

2. The walk-out on December 4th, although probably unreasonable and unwise, was no doubt protected activity. National Labor Relations Board v. Washington Alumium Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). The primary motivation for the discharge on the 20th, however, was the walk-out on that day. Since the Board did not rely on the December 4th walk-out, we do not rely on it here; therefore if the walk-out on the 20th was unprotected activity, Hagopian could have discharged the strikers for cause without violating the Act. National Labor Relations Board v. Ogle Protection Service, Inc., 375 F.2d 497 (6th Cir. 1967).

and competency of the cashier had a direct connection with the working conditions of the salesmen. Also the Eighth Circuit held in Colson Corporations v. National Labor Relations Board, 347 F. 2d 128 (8th Cir. 1965), that a walk-out by a team of four welders to protest the promotion of an inexperienced welder to leadman of their team was protected activity.

■ The capabilities and competency of a helper would certainly affect the working conditions of the employee whom he assists. The instant case is distinguishable from *Guernsey*, *Phoenix*, and *Colson*, only by the temporary nature of the work assignment. But that distinction has no relevancy in determining whether the action of management affected conditions of employment; it would have relevancy only in demonstrating the unreasonableness of the actions of the four carpet installers. That the actions of employees are unnecessary and unwise, however, is immaterial to a determination that a current labor dispute exists. National Labor Relations Board v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).

On the other hand, if Mason had remained on the job but refused to perform his assigned duty for some reason other than a dispute over the conditions of employment, his dispute with management would not have been a labor dispute. National Labor Relations Board v. Dixie Terminal Co., 210 F.2d 538, 43 A.L.R.2d 902 (6th Cir. 1954). The four employees, however, did clock-out; and concerning the basis of the dispute, Mason testified that he objected to Bob Daugherty, the assigned helper, because of Daugherty's inability to sew. According to Mason, his assigned work for the day included a considerable amount of sewing and sewing was the most tedious work in installing carpets. The Trial Examiner found that Mason in good faith [3] believed that Daugherty's lack of competency would make his job more onerous. Besides the testimony of Mason and the other three carpet installers, Arthur Papazian's testimony supports this finding. Papazian testified that when Mason objected to Daugherty, he said that he wanted Tucker as his helper because Tucker had more experience than Daugherty. It is well recognized that the best indication of the cause of a walk-out is the declarations of employees at the time of the walk-out, Dobbs Houses, Inc. v. National Labor Relations Board, 325 F.2d 531 (5th Cir. 1963).

■■ To counter this evidence, Respondent showed that Mason had worked with Daugherty on other jobs and contended that this evidence proved that Mason insisted upon Tucker as a helper because Tucker was his brother-in-law. The Trial Examiner drew a different inference from this evidence, finding that, since Mason had worked with Daugherty on other jobs, his only objection to Daugherty as helper for the asigned jobs on the 20th must have been Daugherty's competency in sewing. Either inference is valid, and the Board is free to choose between two equally valid inferences. Hence, it is clear that the four employees who walked out were engaged in concerted activity over a labor dispute.

■ All concerted activity is not protected by the Act, however, even if it is in protest of conditions of employment. Concerted activity that is unlawful, Southern Steamship Company v. National Labor Relations Board, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942); Hoover Co. v. National Labor Relations Board, 191 F.2d 380 (6th Cir. 1951), or violent, National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627 (1939), or in-

---

3. The reasonableness of the employee's belief is not a consideration. Therefore, proof of whether Mason's job would have in fact been made more onerous would be irrelevant. National Labor Relations Board v. Phaostron Instrument and Electronic Company, 344 F.2d 855 (9th Cir. 1965); National Labor Relations Board v. Holcombe, 325 F.2d 508 (5th Cir. 1963).

subordinate,[4] National Labor Relations Board v. Barberton Plastics Products, Inc., 354 F.2d 66 (6th Cir. 1965), is not protected by the Act. Nor does the Act protect concerted activity that is "indefensible", such as libeling an employer in an attempt to ruin his business. National Labor Relations Board v. Local Union No. 1229, International Brotherhood of Electrical Workers, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953). The walk-out by the four carpet installers, however, was none of these. Having no bargaining representative, the men took the most direct method of informing management of their grievance.

■ Nevertheless, an employer is not helpless to prevent such arbitrary and unreasonable disturbances of his production schedule. He can contract with his employees to forego strikes for some more orderly method of presenting their grievances; Plasti-Line, Incorporated v. National Labor Relations Board, 278 F. 2d 482 (6th Cir. 1960); Cf. Metal Blast Inc. v. National Labor Relations Board, 324 F.2d 602, 603 (6th Cir. 1963); and concerted activity in repudiation of the employees' agreement would justify discharge for cause, even though the activity would otherwise be protected by the Act. Cf. National Labor Relations Board v. Sands Manufacturing Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682 (1939). Rules for the orderly presentation of grievances can also be established, the wilful violation of which would justify discharge for cause.[5] National Labor Relations Board v. Polynesian Arts, Inc., 209 F.2d 846 (6th Cir. 1954). On the record in this case, we cannot determine whether one of these defenses was available to the Respondent; and because the conduct of the hearing by the Trial Examiner deprived the Respondent of an opportunity to present evidence that might establish such defenses, we conclude that the Board's order cannot be enforced.

■ In our opinion the overbearing manner of the Trial Examiner and his apparent preconceived notion as to the theory of the complaint deprived the Respondent of a fair hearing. On numerous occasions the Examiner assumed the questioning of the witnesses and refused to allow the Respondent's counsel an opportunity to develop his theory of the case. Particularly, the Examiner refused to accept any evidence concerning previous changes in the work schedule at the request of the employees. From such evidence the Respondent might have been able to show an established company rule in presenting such grievances. We find that the Respondent was prejudiced by the refusal to admit this evidence. Cf. National Labor Relations Board v. Blase, 338 F.2d 327 (9th Cir. 1964). An impartial trier of fact who is unconcerned in the result of the case is the essence of fair administrative adjudication. National Labor Relations Board v. National Paper Co., 216 F.2d 859 (5th Cir. 1954).

Enforcement of the Board's order is denied, but without prejudice to the Board's institution of a new hearing concerning the complaint of discriminatory discharge.

---

4. Respondent contends that the walk-out here amounted to insubordination, but that contention is fallacious. If a labor dispute existed, as the Board found, the instigation of a strike, although insubordinate in the usual sense of the term, cannot be that type of insubordination that justifies discharge. Hamilton v. National Labor Relations Board, 160 F.2d 465, 469 (6th Cir. 1947).

5. A rule may not be used as a subterfuge, however, to prevent any presentation of a grievance. National Labor Relations Board v. Southern Silk Mills, Inc., 210 F.2d 824 (6th Cir. 1954); Cf. National Labor Relations Board v. Washington Aluminum Co., 370 U.S. 9, 16–17, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).