BROMINE DIVISION, DRUG RE-SEARCH, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1732.

United States Court of Appeals, Sixth Circuit.

April 28, 1980.

Dee Edwards, Royal Oak, Mich., for petitioner.

Elliott Moore, Paul Spielberg, Deputy Associate Gen. Counsel, Kathy L. Krieger, N. L. R. B., Washington, D. C., Bernard Gottfried, Director, Region 7, N. L. R. B., Detroit, Mich., for respondent.

Before KEITH, KENNEDY and MARTIN, Circuit Judges.

## ORDER

Petitioner Drug Research, Inc., seeks review of the Board's order and the Board seeks enforcement of its order determining that Petitioner engaged in various unfair labor practices.

The Board found that, pending resolution of Company challenges to ballots cast in a representation election, the Company unlawfully refused to rehire two employees whose ballots had been challenged on the ground that they lacked a reasonable expectation of reemployment; that following certification of the Union as collective bargaining representative, the Company refused to recognize and bargain with the Union; that the unit employees went out on strike to protest the Company's unlawful refusal to bargain; that following the unfair labor practice strikers' unconditional offer to return to work, the Company unlawfully refused to reinstate four strikers; that the Company unilaterally granted wage increases after the Union had been certified as bargaining representative; and the Company interfered with strikers' Section 7 rights by threatening strikers with criminal prosecution and by informing reinstated strikers that they were to be regarded as new employees.

The Board's order requires the Company to cease and desist from the unfair labor practices found and from in any other manner interfering with, restraining or coercing employees in the exercise of rights guaranteed in Section 7 of the Act. Affirmatively, the order requires the Company to make whole Sterling and Burgess for any loss of earnings suffered as a result of the Company's unfair labor practices; to offer the four unfair labor practice strikers immediate and full reinstatement to their former or substantially equivalent positions and to make them whole for any loss of earnings suffered by reason of the Company's refusal to reinstate them; to bargain collectively with the Union upon request; and to post the usual notice.

Upon consideration of the record and the arguments made to this Court, we are of the opinion that the Board's order should be enforced.

CORNELIA G. KENNEDY, Circuit Judge (concurring in part and dissenting in part.)

While I concur in all other portions of the Court's order I respectfully dissent from that portion which grants enforcement of the Board's order requiring reinstatement of Earl Stevens. Dr. Laurene Paterson, the president and manager of the respondent, testified that Stevens was not recalled because of his conduct stemming from an occasion when he was arrested by the police at the plant. The parties stipulated that Stevens had pled guilty to illegal entry without breaking and to malicious destruction of personal property and that the incident involved in those guilty pleas occurred during the course of the strike.

In determining whether there has been an 8(a)(1) violation, the Supreme Court has prescribed a multistep formula. *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). The General Counsel must first show that there has been discrimination within the meaning of the act. *Id.* at 32, 87 S.Ct. at 1796. In order to find a violation, it must be proven that the discriminatory conduct was motivated by an antiunion purpose. *Id.* at 33, 87 S.Ct. at 1797. If the conduct was inherently coercive, then an antiunion motive is presumed, and the burden shifts to the em-

ployer to explain his motive. If, on the other hand, the harm was slight, an affirmative showing must be made of improper motive, once the employer has come forward with proof of a legitimate and substantial business justification. *Id. See generally NLRB v. Elias Brothers Restaurants,* 496 F.2d 1165, 1167 (6th Cir. 1974); *NLRB v. Cement Transport, Inc.,* 490 F.2d 1024, 1028 (6th Cir. 1974), *cert. denied,* 419 U.S. 828, 95 S.Ct. 47, 42 L.Ed.2d 52 (1974).

When the discrimination complained of is failing to reinstate an employee for alleged unlawful or violent activity, *see Hagopian & Sons, Inc. v. NLRB,* 395 F.2d 947, 952–53 (6th Cir. 1968), additional elements of proof are required. ". . . § 8(a)(1) is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity, and that the employee was not, in fact, guilty of that misconduct." *NLRB v. Burnup & Sims,* 379 U.S. 21, 23, 85 S.Ct. 171, 172, 13 L.Ed.2d 1 (1964). Once an honest belief in such misconduct is established, the burden shifts to the General Counsel to prove that the employee did not, in fact, engage in the misconduct, *id.* at 23 n.3, 85 S.Ct. at 172 n.3, or, as this Circuit has stated it, the question is whether the employee was "guilty of misconduct so outrageous as to justify his discharge in spite of his protected activities." *Cement Transport, supra,* at 1029; *see NLRB v. Hartmann Luggage Co.,* 453 F.2d 178, 185 (6th Cir. 1971).

In his opinion (which was adopted by the Board) the ALJ held that the employer had failed to prove a good faith belief that the employee was guilty of misconduct when respondent failed to establish the factual nature of the misconduct which it believed Stevens had engaged in. This conclusion, however, places the burden of proving the existence of actual misconduct on the respondent rather than requiring the General Counsel to prove that the employee was not guilty of the misconduct, as required by the Supreme Court.

It is my opinion that Dr. Paterson's testimony does meet her burden of going forward with evidence of a legitimate and substantial business justification. She testified that during the strike telephone wires at the plant were cut five times (A. 250). She explained that in light of the hazardous chemicals manufactured in the plant this created a very dangerous situation by cutting off contact with the police, fire department, or ambulance services (A. 250). She further testified that because of the concern about the telephone lines a device had been installed so that an alarm would ring at the Police Department if the phone wires were cut again. Although she did not have first hand knowledge, she had been advised that this alarm did ring and in answer to it the police came to the plant and found Earl Stevens coming out the door. Immediately after this testimony the parties entered into the stipulation regarding Stevens' guilty pleas. Although Dr. Paterson had no first hand knowledge that Stevens cut the telephone lines, respondent established her good faith belief that he was responsible. There is no evidence to the contrary. In a strike marked by other violence, another employee, Parr, was denied reinstatement for throwing rocks through windows at employees in the plant. The Board, of course, must consider the seriousness of an employee's misconduct in determining whether reinstatement would effectuate the policies of the Act. *Local 833, UAW–AFL–CIO v. NLRB,* 300 F.2d 699, 702–03 (D.C. Cir. 1962). There can be no question that cutting telephone lines under the circumstances described here was serious misconduct which could have seriously injured those in the plant in case of a chemical accident and is a legitimate and substantial justification for not reinstating him.