746 F.2d 334
 117 L.R.R.M. (BNA) 2737, 102 Lab.Cas. P 11,219
 AQUABROM, DIVISION OF GREAT LAKES CHEMICAL CORP., as
Successor to Bromine Division, Drug Research, Inc.
Tesco Chemicals, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 77-1732.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 31, 1984.
Decided Oct. 18, 1984.
 
 Dee Edwards, Royal Oak, Mich., Lawrence Scoville, argued, John C. Donelly, Eileen Drake, Suanne Trimmer, Clark, Klein & Beaumont, Detroit, Mich., Robert Brigham, West LaFayette, Ind., for petitioner.
 Bernard Jeweler, Contempt Litigation, Elliott Moore, Paul Spielberg, Paul Elkind, Deputy Associate Gen. Counsel, N.L.R.B., William Bernstein, argued, Kathy L. Krieger, P. Eveleth, Washington, D.C., for respondent.
 Before KEITH and MARTIN, Circuit Judges, and SILER, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The National Labor Relations Board asks this Court to hold Great Lakes Chemical Corporation and its Aquabrom subdivision in civil contempt for failing to comply with this Court's judgment of May 23, 1980 (reported at 621 F.2d 806) enforcing in full a Board order issued on November 4, 1977 (reported at 233 N.L.R.B. 253). The major issue on appeal is whether a dispute over successorship in a contempt proceeding should be decided in the first instance by a Special Master appointed by this Court or by the Board.
 
 
 2
 This case began in June of 1975, when the United Auto Workers won an election to represent workers at a chemical plant operated by the Bromine Division of Drug Research, Inc., in Adrian, Michigan. On July 1, 1976, the union was certified by the Board's Regional Director as the exclusive bargaining representative for employees at the Adrian plant. Drug Research refused to recognize the union in order to test the validity of the certification. On June 15, 1977, prior to any ruling by the Board on its challenge, Drug Research sold the Adrian plant to Great Lakes Chemical Corp. Great Lakes retained 36 of the 44 employees in the unit that had won the contested representation election. It also retained most of the unit's supervisors. On November 4, 1977, the Board issued its order upholding the validity of the election that made the UAW the exclusive bargaining representative for the Adrian plant. 233 N.L.R.B. 253. The order directed Drug Research, "its officers, agents, successors and assigns" (emphasis added) to bargain with the UAW. Drug Research appealed the Board's order to this Court which enforced the Board's order on May 23, 1980. Bromine Division, Drug Research, Inc. v. NLRB, 621 F.2d 806 (6th Cir.1980). Claiming not to be a successor to Drug Research, Great Lakes Chemical refused to bargain with the UAW.
 
 
 3
 On January 23, 1981, the Board's General Counsel initiated these contempt proceedings against Great Lakes Chemical. On November 3, 1981, this Court appointed a Special Master to determine, among other things, whether Great Lakes was a successor to Drug Research. The Special Master subsequently found that Great Lakes was a successor and so was obligated to bargain with the UAW. On review of the Master's findings, Great Lakes argues that the successorship issue should have been decided by the Board in the first instance and not by the Master. We agree.
 
 
 4
 The Supreme Court's decision in Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), provides guidance on the appropriate role for the Board in successorship determinations. In that case, the Court ruled that a successor company was responsible for remedying the unfair labor practices of its predecessor under sections 8(a)(1) and 8(a)(3) of the Act.[1] In the course of its decision, the Court was forced to respond to a complaint by the company that making it liable for the actions of its predecessor when it was not a party to the proceedings before the Board that established the labor law infractions would violate Fed.R.Civ.P. 65(d), which provides that injunctions and restraining orders are binding only on the parties to the action, their agents, and those acting in concert with them. The Court noted that the purpose of Rule 65(d) was to avoid the issuance of "order[s] or injunction[s] so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." Id. at 180, 94 S.Ct. at 423 (quoting Regal Knitwear Co. v. NLRB, 324 U.S. 9, 13, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945)). The Court went on to say:
 
 
 5
 The tie between the offending employer and the bona fide purchaser of the business, supplied by a Board finding a continuing business enterprise, establishes the requisite relationship of dependence. Moreover, procedures were announced in Perma Vinyl [Corp., 164 N.L.R.B. 968 (1967), aff'd 398 F.2d 544 (5th Cir.1968) ] which provide the necessary procedural safeguards. There will be no adjudication of liability against a bona fide successor "without affording [it] a full opportunity at a hearing, after adequate notice, to present evidence on the question of whether it is a successor which is responsible for remedying a predecessor's unfair labor practices. The successor [will] also be entitled, of course, to be heard against the enforcement of any order issued against it."
 
 
 6
 164 N.L.R.B. at 969.
 
 
 7
 The Board argues that the procedural safeguards called for in Golden State need not be provided by a hearing before the Board but rather can be provided by a hearing before the Special Master. We do not believe that the Supreme Court meant for us to focus only on the safeguards and not on the forum in which they are provided. Moreover, we note the existence of significant policy reasons for requiring the Board, rather than an instrumentality of this Court, to make the initial factfinding on successorship. As the Eleventh Circuit noted in Computer Sciences Corp. v. NLRB, 677 F.2d 804 (11th Cir.1982), the Board has much more expertise in the successorship area than does this Court and so should be deferred to for the initial determination. "Reasons akin to those underlying the doctrine of exhaustion of administrative remedies persuade us that it is ill-advised to resolve these highly factual and close issues before the agency possessing expertise in these matters has passed upon the question...." Id. at 807.[2]
 
 
 8
 The Board argues that Computer Sciences is distinguishable because the real dispute in that case was over continued appropriateness of the unit. In our case, Great Lakes does not contest the continued appropriateness of the unit but rather argues that changes in operating policy since the takeover relieve it from successorship responsibility. This is a distinction without a difference. The court in Computer Science noted that unit determinations should be made by the Board in part because they "may be decisively affected by changes in operational structure or practices under the new employer." Id. at 806. The same is true of the successorship issue in this case. One of Aquabrom's primary arguments against its successorship status is that it has put in place significant changes in its operational structure. Such changes, if true, might mean Aquabrom was not a successor to Bromine. See Woolrich Industries, Inc., 246 N.L.R.B. 43 (1979); Int'l Union of Electrical, Radio & Machine Workers v. NLRB, 604 F.2d 689, 694 (D.C.Cir.1979).[3]
 
 
 9
 Accordingly, we retain jurisdiction of this case and remand to the Board the sole question of whether Great Lakes is a successor to Drug Research, Inc. Because there has been such an extraordinary delay between the initial union election at the Adrian plant and the initiation of collective bargaining in this case (bargaining which has yet to begin), we urge the Board to handle this matter in the most expeditious manner possible.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation
 
 
 [1]
 Although refusal to bargain with an authorized collective bargaining representative is an 8(a)(5) unfair labor practice, the Board has not provided, nor have we been able to discover, any reason for not extending the holding of Golden State to an 8(a)(5) situation
 
 
 [2]
 The Court limited its deferral policy to cases where the "dispute over successorship is bona fide.... When the dispute ... is but a sham, this court may proceed via contempt proceedings." Computer Sciences at 806. We agree with this dichotomy but believe that Aquabrom has raised sufficient issues about changes in working conditions to create a bona fide dispute as to successorship. Of course, we recognize that the creation of a dual approach makes it likely that the Board, just to be on the safe side, will conduct a hearing in all but the most obvious cases. That is not, in our view, an undesirable result
 
 
 [3]
 We also note that a policy of deferral to the Board for initial determination of successorship questions will help maintain uniformity in federal labor law. If each court of appeals must make its own successorship decisions in civil contempt cases without guidance from the Board, the possibility of divergence is quite high