850 F.2d 689
 128 L.R.R.M. (BNA) 2952
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
LUMBEE FARMS COOPERATIVE, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 87-3636.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 8, 1988.
Decided: June 28, 1988.
 
 Allan L. Shackelford (Martin N. Erwin, Michael A. Gilles, Smith, Helms, Mulliss & Moore, on brief), for petitioner.
 Laurence S. Zakson (Rosemary M. Collyer, General Counsel; John E. Higgins, Jr., Deputy General Counsel; Robert E. Allen, Associate General Counsel; Aileen A. Armstrong, Deputy Associate General Counsel; Collis Suzanne Stocking, Supervisory Attorney, National Labor Relations Board, on brief), for respondent.
 Before WIDENER and SPROUSE, Circuit Judges, and JOHN A. MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Lumbee Farms Cooperative, Inc. petitions for review of the order of the National Labor Relations Board finding that Lumbee committed unfair labor practices in violation of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1), by discharging four employees because of their involvement in protected activities and by refusing timely to reinstate unfair labor practice strikers upon their unconditional application for reinstatement. The Board has filed a cross-application for enforcement of its order.[1]
 
 
 2
 Lumbee operates a poultry processing plant, employing approximately 450 employees. Some of the employees formed an "Employees Concerns Council" (ECC) in 1984 to facilitate communicating their grievances, including their desire for higher wages, to management. In response to ECC's requests, some of the grievances were resolved. As of August 1985, however, the employees had not received a pay increase for three and one-half years, and the plant manager indicated to them that there was little hope for a pay raise in the foreseeable future. The ECC met on August 19, 1985 and again on August 22 and discussed the possibility of a strike to bring about better working conditions and increases in pay. Margaret Johnson, an ECC leader, suggested that August 27 would be a prime walkout date because Lumbee would be processing a large number of chickens on that day. Before deciding on a strike, however, ECC members decided to solicit support from other plant employees.
 
 
 3
 On the afternoon of August 26, Isiah Jackson, a company employee, informed management officials that he had learned from coemployees Clark, Smith, Williams, and Townsend that there would be a walkout on the morning of August 27. Jackson related that these employees solicited him to join the strike. He stated that the employees told him the strike was motivated by their desire for higher wages and their concern over Lumbee's hiring of Korean immigrants. The general manager immediately called the four employees Jackson had named to his office and terminated them for "restriction of output and intimidating others to try to stop output" in violation of a company rule.[2]
 
 
 4
 After news of the discharges reached other employees, approximately 100 of them walked out of the plant at 8:00 a.m. on August 27. About one-half of the strikers responded to Lumbee's general manager's threat that they must return immediately or be replaced. The others refused to return to work and left the plant. Later that day and continuing on August 28, the employees conducted picketing activities in support of their unfair labor practices claims and their economic demands.
 
 
 5
 An organizer for the Industrial Union Department of the AFL-CIO (the IUD) met with the employees on August 28 and, after receiving background information concerning the strike, he advised them to make an unconditional offer to return to work. He told them that although they were engaged in an unfair labor practices strike, they had little chance of success. The organizer again met with the strikers on the morning of August 29. The strikers advised the organizer that they wished him to be their spokesman to communicate an unconditional offer to return to work, and he sent Lumbee a telegram relaying that message. He also advised the strikers to put away their picket signs and to return to work at the regular time the following morning.
 
 
 6
 The plant manager replied by telegram that the employees had been permanently replaced and that he would respond in greater detail when he had received the representative's written communication. At the same time, the plant manager instructed Lumbee's chief security officer not to permit the strikers to enter plant property. He directed that if any of the strikers entered the property, they were to be arrested for trespassing. On the morning of August 30, at least forty seven of the strikers attempted to return to work in an "autocaravan," but were turned away with a warning that anyone entering the property would be arrested. The striking employees honored the security officer's direction.
 
 
 7
 Lumbee subsequently contacted the former strikers by mail and informed them that, if they responded with an indication of interest, they would be reinstated as jobs became available. Lumbee eventually offered jobs to some of the strikers. Some of the jobs offered were identical to those the employees had held before the strike, but some were different. Vivian Godwin, one of the leaders of the strike, was reinstated to a job different from the one she had held previously, but then was terminated almost immediately. Lumbee asserts her termination was for refusal to perform her job and insubordination. Godwin contends, however, that she was terminated because of her participation in organizing the strike.
 
 
 8
 The ALJ found that Lumbee violated section 8(a)(1) by discharging Clark, Townsend, and Williams on August 26, 1985; by failing fully to reinstate the unfair labor practice strikers upon their unconditional offer to return to work on August 30; and by discharging Godwin after she had returned to work because of her previously protected concerted activities. The Board adopted the ALJ's findings and order.
 
 
 9
 Lumbee contends that Clark, Townsend, and Williams were discharged because their actions were improperly motivated by their objection to the presence of Koreans in their work force and that their terminations were brought on by their remarks concerning the Koreans. The employees contend that the reference by one or more of the women to the four Koreans in the plant was only a passing remark related to an economic concern and that the women promoted the walkout to improve their economic and working conditions.
 
 
 10
 Evidence was presented before the ALJ to support each of these opposing positions. Both the ALJ and the Board agreed with the employees, finding that the walkout was motivated by legitimate economic concerns and that the employer's decision to fire the employees was motivated by their participation in the protected activities.[3] Determination of the parties' motivations is a factual determination. Salem Leasing Corp. v. NLRB, 774 F.2d 85, 89 (4th Cir.1985). Here, substantial evidence supports the Board's findings, and we find no basis for disturbing its decision. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88 (1951). (Board's findings will be accepted when supported by substantial evidence); accord NLRB v. Daniel Construction Co., 731 F.2d 191, 193 (4th Cir.1984).
 
 
 11
 Similarly, the parties introduced conflicting evidence concerning the motivation for Godwin's discharge after her return to work at Lumbee. Both the ALJ and the Board concluded that Godwin's firing was in retaliation for her earlier concerted activity. This finding also was supported by substantial evidence and therefore is entitled to acceptance. Universal Camera, 340 U.S. at 487-88; Daniel Construction Co., 731 F.2d at 193.
 
 
 12
 We find no merit to Lumbee's contention that the IUD representative was not an appropriate agent to relay the employees' unconditional offer to return to work because his union was not their elected representative. See Marlene Industries Corp. v. NLRB, 712 F.2d 1011, 1018 (6th Cir.1983); NLRB v. Phaostron Instrument & Electronic Co., 344 F.2d 855, 859 (9th Cir.1965). We similarly reject Lumbee's contention that the IUD is not a "person" with the capacity to file charges pursuant to 29 U.S.C. Sec. 152(1). See 29 U.S.C. Sec. 152(5).
 
 
 13
 The petition of Lumbee is, therefore, denied. The order of the NLRB is enforced.
 
 
 14
 DENIED.
 
 
 
 [1]
 The Board's order is reported at 285 N.L.R.B. 51 (1987)
 
 
 [2]
 Smith denied speaking with Jackson, and Lumbee later reinstated her with backpay
 
 
 [3]
 The ALJ credited Jackson's testimony to the extent that he accepted that the employees told Jackson the hiring of Koreans "who would work for anything" was a source of discontent. The ALJ also noted, however, that Jackson's testimony concerning the cause of the strike was ambiguous, that the employees had complained about low pay on numerous prior occasions but that no mention was made of the hiring of Korean workers during the organizational meetings for the strike, and that only six of Lumbee's 450 employees were Korean